Jaymie A. **DURNAN,** Plaintiff,

v.

**UNITED STATES DEPARTMENT OF
COMMERCE, et al., Defendants.**

Civ. A. No. 90–2704.

United States District Court,
District of Columbia.

July 22, 1991.

Richard Linn, Lance Gotthoffer, Marks, Murase & White, Mary L. Hartman, Jones, Day, Reavis & Pogue, Washington, D.C., for plaintiff.

Marina Utgoff Braswell, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM AND OPINION

REVERCOMB, District Judge.

The defendants have moved for summary judgment in this Freedom of Information Act ("FOIA") suit challenging the Department of Commerce's ("DOC") nondisclosure of certain documents responsive to the following request:

> All documents, drawings, technical data, designs, formulations, blueprints, engineering and process drawings given to Mr. Steve Lacy, Bureau of Export Administration, of the Department of Commerce by Dale C. Danver, President of DTG, in Eastlake, Ohio in April 1985, or any material that refers and/or relates to the aforementioned transfer by Mr. Danver.

Sometime prior to April 1985, Dale C. Danver's company, Danver Technologies Group, Inc. ("DTG"), had applied with the DOC for a license to export certain copper foil technology. In support of that application, Danver provided documents and other relevant materials to the DOC.

In their investigation of the application, the DOC asked Gould Inc., Mr. Danver's former employer and a leading producer of copper foil, whether the technology DTG was seeking to export fell within the technical definition of copper foil technology prohibited from export. In response to this and other DOC inquiries concerning DTG's license application, Gould provided the

DOC with documents relating to its technology. According to Gould, the documents were turned over with assurances by the DOC that their confidential nature would be preserved.

Subsequently, Gould filed suit against Danver and DTG alleging that, during his employment with Gould, Danver had misappropriated proprietary information of Gould and provided that information to certain of Gould's competitors. Gould also filed suit against the recipients of the misappropriated information, including Mitsui Mining & Smelting Co., Ltd. The plaintiff in this FOIA action is an attorney in the firm defending Mitsui against Gould's suit. Gould was granted leave by the Court to intervene in this action to protect its interest in the contested documents. Relying primarily on FOIA Exemptions 3 and 4, as well as Exemptions 5 and 7, the DOC has withheld from disclosure all of the documents responsive to the plaintiff's FOIA request. The nondisclosure, therefore, includes documents provided to the DOC by Danver and DTG as well as the documents provided by Gould.

The Court will consider the application of each Exemption separately.

*Exemption 3*

■ The disclosure requirements of the FOIA do not apply to documents "specifically exempted from disclosure by statute ... provided that such statute (A) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or *refers to particular types of matters withheld.*" 5 U.S.C. § 552(b)(3) (emphasis added). The DOC asserts that all of the documents withheld in this case are exempted from disclosure by Section 12(c) of the Export Administration Act, which provides in relevant part that "information obtained for the purpose of consideration of, or concerning, license applications under this Act ... shall be with-

held from public disclosure unless the release of such information is determined by the Secretary to be in the national interest." 50 U.S.C.App. § 2411(c)(1).

The Court holds that Section 12(c) clearly meets the criteria of Exemption 3 by specifically describing the type of information within the DOC's possession which will be withheld—license applications and related materials. In so holding, the Court concurs with the Ninth Circuit's decision in *Lessner v. United States Department of Commerce,* 827 F.2d 1333 (1987), and finds that the decision relied on by the plaintiff, *American Jewish Congress v. Kreps,* 574 F.2d 624, 632 (D.C.Cir.1978), was nullified by Congresses' later amendment of Section 12(c).

Because all of the documents withheld in this case were provided to the DOC in connection with DTG's license application, they are protected from disclosure under Section 12(c) of the Export Administration Act and, therefore, fall within FOIA Exemption 3.[1] Although Exemption 3 supports the DOC's nondisclosure of all of the documents responsive to the plaintiff's FOIA request, the Court has also considered the applicability of the other exemptions relied upon by the DOC in withholding the documents.

*Exemption 4*

■ This FOIA exemption excludes from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Although Danver has apparently waived any objection that he might have under this exemption to disclosure of the documents which he provided to the DOC, the Court must still consider the application of this exemption to Gould's documents. The plaintiff argues that in order to rely on this exemption, the defendants must establish that disclosure of the "confidential" information "is likely 'a) to

1. The plaintiff has requested the opportunity for discovery in order to determine whether the contested documents actually fall within Section 12(c). Although the plaintiff disputes the applicability of Section 12(c), he has not disputed the asserted facts that DTG applied for an export

license and that Gould provided information to the DOC concerning that application. In light of these undisputed facts, the Court finds that the plaintiff is not entitled to discovery on this issue.

impair the Government's ability to obtain necessary information in the future; or b) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" *Greenberg v. FDA*, 803 F.2d 1213, 1216 (D.C.Cir.1986) (quoting *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C.Cir.1974)). The plaintiff asserts that the defendants have failed to meet their burden under this standard. The Court disagrees.

In support of their motion, the defendants have filed two declarations and a *Vaughn* index describing the documents withheld. In his declaration, Denis C. Kerner, an Export Enforcement Analyst for the DOC, explains:

> Disclosure of material being protected under [exemption 4] would be likely to impair the Department's ability to obtain [trade secrets and commercial or financial information which is privileged or confidential] in the future. The voluntary cooperation of individuals and companies that have knowledge about technology controlled by U.S. export laws, or about entities being investigated, are [sic] essential to the effective enforcement of these laws.

Kerner Decl. ¶ 9. Although the plaintiff characterizes this statement as "conclusory", the Court finds the explanation an adequate statement of the government's need to protect the information sought here. The declaration defines the type of information sought by the government—information about technology and entities being investigated—and explains that such information is used in the enforcement of export laws.

The fact that the government needs to protect the confidential nature of the information provided is further evidenced by Section 12(c) of the Export Administration Act which, as discussed above, specifically excludes from public disclosure information pertaining to export license applications. Moreover, the Court rejects the plaintiff's argument that disclosure would not impair the DOC's ability to obtain necessary information through voluntary cooperation in light of the DOC's *sub poena* power. Even if the agency were to exercise that power, parties would be entitled to protection of confidential information provided pursuant to the *sub poena*. Thus, the Court concludes that the defendants have established that disclosure of the information sought would "impair the government's ability to obtain necessary information in the future." *Greenberg*, 803 F.2d at 1216.

The Court finds that the defendants have also satisfied the second prong of the *Greenberg* standard. The affidavit submitted by Peter Peckham, President of the Foil Division of Gould Inc., clearly spells out the sensitive nature of the information provided by Gould to the DOC. The plaintiff questions the adequacy and appropriateness of the defendants' reliance on this declaration. The Court finds, however, that the representations of Gould as to the nature of the documents provided to the DOC and circumstances under which it provided those documents are relevant to an evaluation of whether disclosure of such information would "cause substantial harm to the competitive position of the person from whom the information was obtained." *Greenberg*, 803 F.2d at 1216. The Court is also influenced by the fact that many of the documents sought in this FOIA request fall within the scope of confidentiality orders issued in the ongoing trade secret litigation.

Thus, the Court holds that under either prong of the *Greenberg* standard the DOC is justified in withholding Gould's documents pursuant to Exemption 4.

*Other Exemptions*

In addition to the exemptions noted above, the defendants also rely on Exemptions 5 and 7 in withholding certain of the documents responsive to the plaintiff's FOIA request. The plaintiff has agreed to the withholdings claimed pursuant to Exemption 7 (Opp. at 21–22) but contests the DOC's reliance on Exemption 5, the deliberative process privilege. Specifically, the plaintiff asserts that the defendants have not met their burden of demonstrating that the documents withheld are both predecisional and deliberative. The Court finds,

however, that in most cases the defendants' *Vaughn* index adequately describes the documents withheld pursuant to this exemption.[2] For example, Document 2 is an internal memorandum recommending suspension of DTG's license; Document 23 outlines the Department of Defense's licensing position; and Document 51 describes part of the investigation of claims against DTG. Although the Court agrees that in some cases the *Vaughn* index description fails to fully explain how the document described fits within the deliberative process privilege, the Court has already determined that *all* of the documents were properly withheld pursuant to Exemption 3 and that Gould's documents were also properly withheld under Exemption 4.

For the foregoing reasons, the defendants' Motion for Summary Judgment is GRANTED.

2. In his Opposition, the plaintiff raises general objections to the sufficiency of the defendants' *Vaughn* index and supporting affidavit of Mr. Kerner. Although the Kerner affidavit only generally describes the DOC's reliance on the exemptions cited, when read in conjunction with the *Vaughn* index, which describes each document withheld and the exemption relied on, the basis for the defendants' nondisclosure of the documents is evident.