United States Court of Appeals,

Eleventh Circuit.

No. 97-8595.

SQUISH LA FISH, INC., a Florida corporation, Plaintiff-Appellant,

v.

THOMCO SPECIALTY PRODUCTS, INC., A Georgia corporation, Defendant-Appellee.

Aug. 11, 1998.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:95-cv-3278-ODE), Orinda D. Evans, Judge.

Before ANDERSON and BIRCH, Circuit Judges, and COHILL[*], Senior District Judge.

COHILL, Senior District Judge:

Appellant Squish La Fish, Inc. ("Squish") appeals from a grant of summary judgment on all claims in favor of the Defendant/Appellee, Thomco Specialty Products, Inc. ("Thomco"). The district court held that under Georgia law Squish La Fish could not recover under the negligent misrepresentation exception to the economic loss rule, because it had not relied on the alleged misrepresentation. We do not agree, and will reverse and remand.

I. Factual and Procedural Background

Squish La Fish developed and holds the patent on a plastic household device called the "Tuna Squeeze," which may be used to squeeze oil and water from cans of tuna fish and other similar products. On October 4, 1994, Squish La Fish entered into a written contract with American Body Building Products of Florida ("American Body Building"), a distributor of health drinks and other products. American Body Building agreed to purchase a quantity of 10,000 Tuna Squeezes

[*]Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

for a price of $5,000, or 50 cents per unit. In November of 1994, Squish La Fish and American Body Building orally agreed that American Body Building would purchase 2,000,000 additional units, half in 1995, and half in 1996. American Body Building would pay the same price of 50 cents per unit for the additional Tuna Squeezes.

To package the 10,000 units for American Body Building, Squish retained ProPack, Inc. ("ProPack"), an Atlanta packaging firm. Each plastic Tuna Squeeze needed to be affixed to a preprinted cardboard "point of purchase" card so that it could be properly displayed. Squish left the determination of the best way to package the Tuna Squeeze to ProPack. However, ProPack's expertise was in blister packaging, in which heat affixes a molded plastic cover over the product and attaches it to the card; this type of packaging was not appropriate for the Tuna Squeeze. Therefore Steve Munson, president of ProPack, consulted with Appellee Thomco, a corporation which distributes 3M adhesives, as to what type of adhesive would be appropriate.

Kelly Guinsler, one of Thomco's salespeople, went to ProPack to discuss the choice of packaging adhesive with Munson. Steve Turner, who was ProPack's production manager, was also present at some of these meetings. Guinsler took along a kit showing samples of two-sided tapes, as well as samples of adhesive and the gun-like mechanism used for its application.

The deposition testimony reflects a factual dispute regarding these meetings. Squish La Fish contends that ProPack's president Munson, told Thomco's Kelly Guinsler that the adhesive had to: (1) provide a strong bond between the Tuna Squeeze and the point of purchase card; and (2) wash off the product easily. Munson Dep. at 17; Turner Dep. at 19-21, 39-40. Squish asserts that Guinsler then recommended a 3M adhesive known as "Extra High Tack Adhesive Transfer" and bearing the product number 976 ("the 976 adhesive" or "the adhesive"). Munson Dep. at 17-20, 29-

2

30, 32-33; Turner Dep. at 27. According to Squish, Guinsler told both Munson and Turner that the 976 adhesive was water soluble and would easily wash off the Tuna Squeeze with warm water. Munson Dep. at 17-20, 29-30, 32-33; Turner Dep. at 19-21, 27, 39, 40-41.

Guinsler's deposition testimony gives a somewhat different description of the information provided at his meetings with ProPack. Guinsler knew that ProPack was packaging the Tuna Squeeze for Squish La Fish. Guinsler's deposition testimony states he was aware that adhesive removability was an important consideration, along with bondability and speed of application. Guinsler Dep. at 39-40. Guinsler testified (for Thomco) that he told Munson (at ProPack) to test the 976 adhesive for water solubility, and that he himself "thought it [the 976] would come off" the Tuna Squeeze. Guinsler Dep. at 16-21, 47. Munson, however, denies that Guinsler told him to test the adhesive, and he did not test it. Munson Dep. at 28. Munson testified at his deposition that he relied on Guinsler's representations regarding the adhesive's solubility because Guinsler had expertise with adhesives and was representing 3M, the adhesive's manufacturer. Munson Dep. at 32-3. At no time prior to the use of the adhesive did ProPack test the adhesive for water solubility or removabilty. Munson Dep. at 19, 27, 30.

ProPack discussed the adhesive options over the telephone with Michael Evante, Director of Marketing for Squish La Fish. Munson Dep. at 31. Evante directed Munson to decide with Kelly Guinsler "whatever was best, whatever is most economical and is going to do the job...." Munson Dep. at 28, 31. Munson told Evante that Guinsler had suggested the 976 adhesive. Evante testified that he responded "[t]hat guy is the expert. I've never heard of it, but he's the expert, so you guys do what you've got to do, just get me my product." Evante Dep. at 138.

3

ProPack ordered 48 rolls of the 976 adhesive on November 9, 1994, and began attaching the Tuna Squeeze to the point of purchase cards. On November 17, the company ordered an additional 24 rolls of the adhesive. On November 18, ProPack shipped two cases of the fully packaged Tuna Squeeze units to Michael Evante at Squish La Fish. Evante inspected the items, and discovered that the adhesive would not wash off the product. When notified of the problem, ProPack had already used the adhesive on about 8,600 of the 10,000 units.

Ultimately, ProPack removed the adhesive by soaking the Tuna Squeezes in mineral oil, and then re-adhered about 3,400 units using two-sided tape supplied by Thomco. It shipped the cleaned and reaffixed units to American Body Building on December 2, 1994. These units represented approximately 30% of the contract amount. American Body Building returned many of the units because they had an oily residue, or because the adhesive would not come off.

On December 15, American Body Building president, Joe Signorelli, wrote to Squish La Fish and requested a written guarantee for the oral contract of 2,000,000 Tuna Squeezes. Evante could not provide such a guarantee, because there were still problems with the packaging. In February 1995, American Body Building canceled the October 4, 1994 written contract for 10,000 units, and canceled the oral agreement for the 2,000,000 additional units.

Squish La Fish filed suit in tort against Thomco, alleging that Thomco was negligent in recommending the 976 adhesive to ProPack and seeking damages of lost profits from both the oral and written agreements with American Body Building. Thomco denied any liability to Squish La Fish, and moved for summary judgment on the theory that plaintiff's complaint was barred by Georgia's economic loss rule. R-34 at 6. The district court granted Thomco's motion for summary judgment. However, the court did not base its grant of summary judgment on application of the

4

economic loss rule, but rather on the reliance element of the negligent misrepresentation exception to the rule. R-34 at 6-8. The court held that Squish La Fish's claim did not fall within the negligent misrepresentation exception because Squish itself did not rely on Thomco's representations. This appeal follows.

The parties agree that this diversity action is governed by Georgia law.

We have jurisdiction over a final decision of a district court under 28 United States Code § 1291.

## II. Standard of Review

We review a grant of summary judgment *de novo,* applying the same standard as the district court, and viewing the evidence in the light most favorable to the party against whom judgment was granted. *Rice v. Branigar Organization, Inc.,* 922 F.2d 788 (11th Cir.1991). Summary judgment is proper only where there is no genuine issue as to any material fact, so that judgment is proper as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Haves v. City of Miami,* 52 F.3d 918 (11th Cir.1995).

## III. Discussion

On appeal, we first address the narrow issue decided on summary judgment by the district court: under Georgia law, did Squish La Fish rely on Thomco within the meaning of the negligent misrepresentation exception to the economic loss rule?

Georgia's economic loss rule bars recovery in tort for purely economic losses. "[A]bsent personal injury or damage to property other than to the allegedly defective product itself an action in negligence does not lie and any such cause of action may be brought only as a contract warranty action." *Advanced Drainage Systems, Inc. v. Lowman,* 210 Ga.App. 731, 437 S.E.2d 604, 607

5

(1993). The rationale behind this rule is that the plaintiff is merely suing to recover the benefit of his bargain. *Id.,* citing *Vulcan Materials Co. v. Driltech,* 251 Ga. 383, 306 S.E.2d 253, 257 (1983).

Georgia courts have recognized two exceptions to the economic loss rule, one of which is directly applicable here.[1] In *Robert & Co. Assoc. v. Rhodes-Haverty Partnership,* 250 Ga. 680, 300 S.E.2d 503 (1983), the Georgia Supreme Court adopted the "negligent misrepresentation exception" from the RESTATEMENT (SECOND) OF TORTS § 522 (1977). Under this now well-established exception to the economic loss rule,

> [O]ne who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

*Robert & Co.,* 300 S.E.2d at 504.

The elements of this cause of action have recently been formulated as follows: (1) the negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance. *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.,* 267 Ga. 424, 479 S.E.2d 727, 729 (1997).

In granting summary judgment in favor of Thomco, the district court concluded as a matter of law that Squish could not avail itself of the negligent misrepresentation exception because it had not directly relied on Thomco's representations. The court agreed with Thomco's argument that "it

---

[1]The "accident exception" to the economic loss rule, which is not relevant to the case before us, permits recovery in tort where a sudden and calamitous event not only causes damage to a product but also poses an unreasonable risk of injury to persons and property. *Vulcan Materials,* 306 S.E.2d at 253.

was ProPack, not Plaintiff, who relied on Defendant's alleged misrepresentation." R-34 at 8. Squish contends that Georgia law is not based upon the direct reliance required by the district court in this case, and that a cause of action exists for parties, such as itself, who indirectly rely on a negligent misrepresentation.

We agree with the Appellant. The language in *Robert & Co.* limits liability to "a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly". *Robert & Co.,* 300 S.E.2d at 504 (emphasis added). We find that the district court committed an error of law when it failed to acknowledge that Squish La Fish's indirect reliance, through ProPack, on Thomco's alleged representations concerning the 976 adhesive, were sufficient to bring the company within the negligent misrepresentation exception to the economic loss rule.

Because the district court granted summary judgment on the ground that indirect reliance on Thomco's alleged misrepresentation did not permit Squish La Fish to plead negligent misrepresentation, it did not address whether any disputed issues of material fact remained for trial regarding the elements of plaintiff's claim. Applying the three-part test for negligent misrepresentation to the facts before the district court, it is clear that Squish La Fish, as the manufacturer of the product being affixed by Thomco's adhesive, was a foreseeable user of Thomco's representations concerning that adhesive. The parties dispute the remaining two prongs of the analysis: whether any false information was conveyed about the adhesive's removability, and whether Squish La Fish indirectly relied upon any such information. The record shows that disputed issues of material fact remain for trial as to both issues.

IV. Conclusion

7

For the foregoing reasons, we reverse the district court's grant of summary judgment and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED.