TIMES PUBLISHING COMPANY, Plaintiff-Appellee,

Media General Operations, Inc. d.b.a. The Tampa Tribune, Intervenor-Plaintiff-Appellee,

v.

UNITED STATES DEPARTMENT OF COMMERCE, Defendant-Appellant.

No. 00-14390

Non-Argument Calendar.

United States Court of Appeals,

Eleventh Circuit.

Jan. 4, 2001.

Appeal from the United States District Court for the Middle District of Florida. (No. 99-02100-CIV-T-26B), Richard A. Lazzara, Judge.

Before TJOFLAT, DUBINA and HULL, Circuit Judges.

HULL, Circuit Judge:

The United States Department of Commerce appeals the district court's grant of summary judgment in favor of Appellees on their Freedom of Information Act claims seeking the disclosure of information concerning all applications for export licenses granted to export goods or services to Cuba from 1996-1999. For the reasons stated below, we reverse and hold that the requested export licensing information is protected from disclosure under the Freedom of Information Act.

I.

Appellees Times Publishing Company ("Times") and Media General Operations, Inc., d/b/a The Tampa Tribune (the "Tribune") filed requests pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking information concerning applications for licenses granted to export goods and services to Cuba from 1996-1999. Specifically, Appellees sought the names of all licensees and the goods and services covered by each license during the specified time period. The Department of Commerce denied the requests under Exemption 3 of FOIA which protects records from disclosure which are specifically exempted from disclosure "by statute." In doing so, the Department of Commerce relied upon section 12(c) of the Export Administration Act of 1979, 50 App.U.S.C. § 2411(c) ("EAA").

Times filed suit in the United States District Court for the Middle District of Florida seeking to compel the disclosure of the requested information. The Tribune was permitted to intervene. Although Appellees did not contest the Department of Commerce's contention that section 12(c) of the EAA was

designed to protect the requested export licensing information from disclosure, Appellees alleged that the withholding of the information was unjustified because section 12(c) of the EAA had lapsed on August 20, 1994—almost five years prior to their FOIA requests. The parties filed cross-motions for summary judgment in the district court based upon the undisputed record and the court granted summary judgment in favor of Times and the Tribune. The Department of Commerce timely appealed.[1]

II.

*A.      The Freedom of Information Act*

The fundamental principle underlying FOIA is public access to government documents. *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 151, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). "Without question, the Act is broadly conceived ... to permit access to official information long shielded unnecessarily from public view and ... to create a judicially enforceable right to secure such information from possibly unwilling official hands." *Id.* at 151, 110 S.Ct. 471 (quoting *EPA v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)). Indeed, FOIA reflects a general philosophy of "full agency disclosure unless information is exempted under clearly delineated statutory language." *Id.* at 152, 110 S.Ct. 471 (quoting *Dep't of the Air Force v. Rose,* 425 U.S. 352, 360-61, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976))(quotation marks omitted). Although there are limited exemptions to the disclosure requirements of FOIA, these exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). As a result, exemptions to FOIA disclosure are to be narrowly construed and the burden is on the agency seeking to prevent disclosure to prove their application. 5 U.S.C. § 552(a)(4)(B); *see also John Doe Agency v. John Doe Corp.,* 493 U.S. at 152, 110 S.Ct. 471. Nonetheless, the Supreme Court has made clear that "[d]espite these pronouncements of liberal congressional purpose, ... the statutory exemptions are intended to have meaningful reach and application." *Id.*

Exemption 3, relied upon by the Department in this case, specifically exempts from disclosure matters excepted by statute, as follows:

> matters that are ... specifically exempted from disclosure by statute ..., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld

---

[1]We review the district court's grant of summary judgment *de novo. Squish La Fish, Inc. v. Thomco Specialty Prod., Inc.,* 149 F.3d 1288 (11th Cir.1998).

5 U.S.C. § 552(b)(3). The "unmistakable thrust" of the *statutory* exemption provided by Exemption 3 of FOIA is to ensure that basic policy decisions on governmental secrecy are made by the legislative rather than by the executive branch. *American Jewish Congress v. Kreps,* 574 F.2d 624, 628 & n. 34 (D.C.Cir.1978)("A central aim of the Freedom of Information Act has been to substitute legislative judgment for administrative discretion."). "Nondisclosure is countenanced by Subsection (B) [of Exemption 3] if, but only if, the enactment is the product of congressional appreciation of the dangers inherent in airing particular data and incorporates a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw." *Id.* at 628-29.

B.        *Protection of Export Licensing Information Under FOIA*

Section 12(c) of the EAA provides for the confidentiality of export licensing information obtained by the government under the EAA. *See* 50 App.U.S.C. § 2411(c). Specifically, section 12(c) states that: "information obtained for the purpose of consideration of, or concerning, license applications under this Act ... shall be withheld from public disclosure unless the release of such information is determined by the Secretary to be in the national interest." 50 App.U.S.C. § 2411(c). The EAA also authorizes the Department of Commerce to promulgate regulations implementing its provisions. 50 App.U.S.C. § 2414(b). The Export Administration Regulations promulgated by the Department echo section 12(c) in providing for the confidentiality of export licensing information. *See* 15 C.F.R. Part 736, Supp. 2 (Administrative Order One)(2000)("Consistent with section 12(c) of the Export Administration Act of 1979, as amended, information obtained by the U.S. Department of Commerce for the purpose of consideration of or concerning license applications, as well as related information, will not be publicly disclosed without the approval of the Secretary of Commerce."). Pursuant to this statute and these regulations, each export license application informs applicants that "[i]nformation furnished herewith is subject to the provisions of Section 12(c) of the Export Administration Act of 1979, 50 App.U.S.C. § 2411(c), and its unauthorized disclosure is prohibited by law."

Section 12(c) of the EAA clearly qualifies as an exemption statute for purposes of FOIA Exemption 3 and protects the specific information sought by Appellees. *See Lessner v. United States Dep't of Commerce,* 827 F.2d 1333, 1337 (9th Cir.1987)(finding that section 12(c) is a FOIA exemption statute and that "[n]ames of applicants certainly would be 'information ... concerning applications' and therefore information that may be withheld under Section 12(c)(1)."); *Durnan v. United States Dep't of Commerce,* 777 F.Supp. 965, 966

(D.D.C.1991)("Because all the documents in this case were provided to the DOC in connection with DTG's license application, they are protected from disclosure under Section 12(c) of the Export Administration Act and, therefore, fall within FOIA Exemption 3."). The current version of the EAA confidentiality provision was enacted precisely to comply with the requirements of FOIA Exemption 3 following a finding that the predecessor confidentiality provision did not qualify to exempt information from public disclosure. *Lessner,* 827 F.2d at 1337; *Durnan,* 777 F.Supp. at 966. The confidentiality provision was enacted to prevent the release of information that could damage exporters and, in turn, the country's balance of trade. *Lessner,* 827 F.2d at 1339. Indeed, Appellees do not argue that section 12(c) does not, by its plain terms, protect the export licensing information that they seek.

The argument raised successfully by Appellees in the district court to secure disclosure of the protected material is that the EAA, of which section 12(c) is a part, lapsed by its own terms prior to their FOIA requests. Thus, even if the language of section 12(c) covers the requested information, there was no "statute" in existence at the time of their requests to protect the information from disclosure under Exemption 3. The Department of Commerce concedes, as it must, that section 12(c) did lapse in 1994. The Department argues, however, that the statutory provision still operates to protect the export licensing information by virtue of an Executive Order of President Clinton maintaining the effectiveness of the EAA during periods of lapse. After review, we agree.

The purpose of the EAA is to provide a rational system for controlling exports by balancing national security, foreign policy, and domestic supply needs with the interest in encouraging exports to enhance U.S. economic well being. *See* 50 App.U.S.C. § 2410. Because "such important regulatory legislation should be periodically reviewed," the EAA has always been enacted as a temporary statute. *See* H.R. Rep. No. 95-459, 95th Cong., 1st Sess. at 13 (1977); 50 App.U.S.C. § 2419 ("The authority granted by this Act ... terminates on August 20, 1994."). Courts have found, however, that Congress has empowered the President to maintain the effectiveness of the critical EAA provisions during periods of lapse through the International Emergency Economic Powers Act, 50 U.S.C. § 1702(a)(1)(B) (the "IEEPA"). *See United States v. Mechanic,* 809 F.2d 1111, 1112 (5th Cir.1987)(noting that President may enter an executive order pursuant to special powers granted by the IEEPA to continue operation of the provisions of the EAA of 1979 and all rules and regulations under it); *United States v. Spawr Optical Research, Inc.,* 685 F.2d 1076, 1082 (9th Cir.1982)("It is unmistakable that Congress intended to permit the President to use [the IEEPA's predecessor statute] to

employ the same regulatory tools during a national emergency as it had employed under the EAA.").[2]

President Clinton exercised the authority given to him under the IEEPA to issue Executive Order No. 12,924 on August 19, 1994, on the eve of the expiration of the EAA, to allow that, "[t]o the extent permitted by law, the provisions of the [EAA], as amended, .... shall be carried out under this order so as to continue in full force and effect and amend, as necessary, the export control system heretofore maintained by the Export Administration Regulations issued under the [EAA], as amended."

Courts addressing the continued vitality of the EAA pursuant to executive orders have found that the Act remains effective by virtue of a presidential order during periods of statutory lapse. *See United States v. Mechanic,* 809 F.2d at 1113; *United States v. Spawr Optical Research, Inc.,* 685 F.2d at 1082.[3] In *Mechanic,* the Fifth Circuit upheld criminal convictions under regulations adopted pursuant to the EAA when the criminal acts alleged in the indictment were committed during a period in which the EAA had lapsed. *Mechanic,* 809 F.2d at 1113 ("Thus, at the time the offenses were committed in April 1985, the EAA of 1979 rested solely upon the President's exercise of his powers under IEEPA."); *see also Spawr Optical,* 685 F.2d at 1082 ("We, therefore, conclude that the President had the authority during the nine-month lapse in the EAA to maintain the export regulations."). Although they do not dispute the general power of the President to continue the effectiveness of the EAA's export control system by executive order pursuant to the IEEPA, Appellees argue that the entry of an executive order still cannot satisfy FOIA's specific requirement of a *statutory* basis for withholding information under Exemption 3.

Congressional intent to maintain the confidentiality of government information is the cornerstone of

---

[2]According to the Department, the EAA frequently lapses because the debate over reenactment of the "highly sensitive statute" often delays passage of the Act. Indeed, it appears that the current version of the EAA has lapsed five times since its passage in 1979 for periods of time ranging in length from five days to six years. *See United States v. Spawr Optical Research, Inc.,* 685 F.2d 1076, 1081, n. 12 (9th Cir.1982)(" 'One of the reasons why the Export Administration Act has been allowed to expire so many times is because there was [IEEPA's predecessor statute] ...' ")(quoting Congressman Bingham, Emergency Controls on International Economic Transactions: Hearings on H.R. 1560 and H.R. 2382 Before the Subcommittee on International Economic Policy and Trade of the House Committee on International Relations, 95th Congress, 1st Sess. 136 (1977)).

[3]We recognize that the courts in *Mechanic* and *Spawr* specifically addressed the validity of regulations adopted pursuant to the EAA during periods of statutory lapse. Although these cases did not involve the withholding of export licensing information pursuant to a statutory FOIA exemption, these courts recognized the continued validity of the EAA by virtue of executive orders entered pursuant to the IEEPA and its predecessor statute. Further, we note the existence of a similar regulation adopted pursuant to the EAA in this case explicitly providing for the confidentiality of the export licensing information sought pursuant to section 12(c) of the EAA. *See* 15 C.F.R. Part 736, Supp. 2 (Administrative Order One)(2000).

Exemption 3. With respect to the export licensing information Appellees seek, Congress has acted specifically to design a statutory provision to maintain confidentiality. Although Congress has permitted the statute containing this provision to lapse on a number of occasions, Congress has authorized the President, also by means of statute, to maintain the force of the confidentiality provision by way of executive order and has acted in accordance with the continued confidentiality of such information during those times of lapse. Further, Congress has renewed the confidentiality provision each time it has renewed the EAA. Finally, on November 2, 2000, Congress renewed the EAA of 1979 through August 20, 2001. In renewing the Act and ending the most recent period of lapse, Senator Gramm, Chairman of the Senate Committee on Banking, Housing and Urban Affairs, stated that "replacing the 1994 expiration date with a 2001 expiration date will make clear that [Commerce's] authority to apply the 12(c) confidentiality provisions of the 1979 act is to be considered as covering any information regarding license applications obtained during that time period, as if there had been no interruption of authority." 146 Cong. Rec. S11365 (Oct. 30, 2000). In signing the amendment on November 13, 2000, President Clinton also stated: "the reauthorization confirms the Department's ability to keep export licensing information obtained during the lapse of the EAA from public disclosure, which is a critical part of the Department's export control system and protects sensitive business information and commercial interests of U.S. exporters." Statement by the President, November 13, 2000. This subsequent legislative history and comment by the executive branch specifically demonstrate Congress' intent to preserve the confidentiality of the precise export license information sought in this case pursuant to executive order during periods of lapse. *See Mechanic,* 809 F.2d at 1114 ("the subsequent legislative history accompanying the enactment of the Export Administration Amendments Act of 1985 supports the validity of the regulation.").

Where Congress has made plain its intention to exclude the information sought by Appellees from public disclosure under FOIA, the purpose of Exemption 3—to ensure that "basic policy decisions on governmental secrecy are made by the Legislative rather than the Executive branch"—is satisfied. *American Jewish Congress,* 574 F.2d at 628. In addition, where there is no dispute that Congress granted the President authority to extend the provisions of the EAA containing the statutory exemption and that the President has exercised this authority in signing Executive Order 12,924, an overly technical and formalistic reading of FOIA to disclose information clearly intended to be confidential would undermine the Supreme Court's direction that the FOIA exemptions are to be given meaningful reach and application. In light of Congress'

clear expression of its intent to protect the confidentiality of the requested export licensing information, it would be truly nonsensical to protect such information submitted to the Department through August 20, 1994, release identical information submitted between August 21, 1994 and November 13, 2000, and again protect such information from November 14, 2000 forward. The confidentiality of the export licensing information sought by Appellees, provided by section 12(c) of the EAA, was maintained by virtue of Executive Order 12,924.

III.

We conclude that the comprehensive legislative scheme as a whole—the confidentiality provision of the EAA, the intended and foreseen periodic expiration of the EAA, and the Congressional grant of power to the President to prevent the lapse of its important provisions during such times—exempts from disclosure the export licensing information requested by Appellees. We, therefore, reverse the grant of summary judgment in favor of Appellees and remand to the district court for the entry of judgment in favor of the Appellant.

REVERSED AND REMANDED.