## A89A1262. AMERICAN LEGION v. FOOTE & DAVIES, INC.

(387 SE2d 380)

SOGNIER, Judge.

Foote & Davies, Inc., brought suit against the American Legion, alleging claims for fraud, negligent misrepresentation, breach of intended third party beneficiary contract, and promissory estoppel. We authorized the American Legion's interlocutory appeal from the denial of its motion for summary judgment.

Construed against appellant as movant, the evidence introduced below reveals that Richard Wooten, a part time employee hired by appellant to develop a "family benefits program" under which appellant's members would receive discounts from participating businesses, met in early 1985 with Howard Cohen, publisher of Better Times magazine, to discuss the magazine's inclusion in the family benefits program. Appellant and Better Times signed an agreement dated May 15, 1985 (hereinafter the "FBP agreement"), whereby Better Times agreed to offer discount subscriptions to appellant's members and to escrow funds sufficient to ensure fulfillment of all subscription orders in exchange for appellant's agreement to advertise the magazine to its members as part of the family benefits program. Better Times subsequently was included in at least one advertisement of the program.

Cohen then contacted appellee about printing an issue of Better Times for distribution to appellant's local posts, asserting that appellant had agreed to use the magazine as part of a national fundraising campaign and would enlist the members of the youth baseball teams at each post to solicit subscriptions. He provided appellee with a copy of a May 8, 1985 agreement, purportedly signed by appellant, Better Times, and an escrow agent, which stated in part that "[t]he National Executive Committee passed a formal resolution on May 8, 1985 naming Better Times as the National fund raising program for [appellant]." Edward Fay, appellee's credit manager, telephoned Wooten for confirmation of the plan. Although in their depositions Fay and Wooten disagreed about much of the content of this conversation, with Fay maintaining that Wooten confirmed Cohen's description of the commitment by appellant, they agree Fay was told that Better Times was to be included in appellant's family benefits program but that marketing of the magazine would be up to the commanders of each local post. On May 17th, Fay drew up a credit authorization for Cohen contingent upon receipt by appellee of "necessary legal papers" binding appellant to market Better Times, but there is no dispute that no such documents were ever received by appellee.

Two weeks later, representatives of appellee met with Wooten, Cohen, and financial and legal advisors and drew up a collection and escrow agreement setting up an escrow account and agent for disbur-

sal of the anticipated subscription revenue among appellee, appellant, and Better Times. The agreement stated in the preamble that Cohen "proposes to enter into an agreement with [appellant] regarding the marketing of the Magazine." The parties agree that at this meeting the marketing plans were discussed only in general terms, and that at no time did appellant agree to guarantee payment of Cohen's printing bill.

Appellee then printed approximately one million copies of Better Times, which included complimentary advertising and membership information for appellant, and distributed them to local Legion posts by July 4, 1985, but as of the end of July only $48,000 had been deposited into the escrow account (whereas the collection and escrow agreement contemplated the receipt of $1.5 million). The parties disagree about the events that transpired in August, but there is no dispute that in September appellant terminated Wooten and suspended the participation of Better Times in the family benefits program, and that appellee was not compensated for the bulk of its expenses incurred in printing and distributing the magazine. Appellee then filed this action, contending that it extended credit to Cohen based upon the existence of an agreement between appellant and Cohen that appellant would actively market Better Times to its members and would solicit subscriptions through the local post baseball teams and others.

1. Appellant first contends the trial court erred by denying its motion for summary judgment on the third party beneficiary claim because there is no evidence of any agreement between it and Cohen to which appellee was an intended beneficiary. "A third-party beneficiary contract is one in which the promisor engages to the promisee to render some performance to a third person. [Cit.]" *Stewart v. Gainesville Glass*, 131 Ga. App. 747, 753 (206 SE2d 857) (1974). "In order for a third party to have standing to enforce [such] a contract . . . it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient. [Cits.]" *Backus v. Chilivis*, 236 Ga. 500, 502 (224 SE2d 370) (1976).

We find no evidence here of any intent of appellant and Cohen to benefit appellee. The only written agreement between appellant and Cohen, the FBP agreement, does not suggest or contemplate any benefit to appellee from the inclusion of Better Times in the family benefits program. Indeed, at the time the FBP agreement was signed, appellee had not been selected as the printer of the magazine. Even assuming, without deciding, that a fundraising agreement between appellant and Cohen did exist (which appellant vehemently denies), any such agreement was made for the mutual benefit of appellant and Cohen, not appellee, and also was made before appellee agreed to print Better Times. Accordingly, we hold appellant was entitled to sum-

mary judgment on the third party beneficiary claim. See generally *West End Investments v. Hills*, 188 Ga. App. 274, 277 (372 SE2d 665) (1988).

2. Appellant next enumerates as error the trial court's denial of its motion for summary judgment on the fraud claim. " ' "(M)isrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence. And where the representation consists of general commendations or mere expressions of opinion, hope, expectation, and the like, and where it relates to matters which from their nature, situation, or time, can not be supposed to be within the knowledge or under the power of the party making the statement, the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself so as to ascertain the truth." ' [Cit.] 'Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events.' [Cit.] Expressions which amount to no more than mere sales 'puffing' do not constitute legal fraud. [Cits.]" *Guernsey Petroleum Corp. v. Data Gen. Corp.*, 183 Ga. App. 790, 793 (359 SE2d 920) (1987).

The misrepresentations at issue here are the alleged confirmations given to appellee by Wooten and others at appellant's national headquarters that Cohen had validly represented to appellee that appellant had adopted Better Times as the centerpiece of its national fundraising campaign, that it would enlist its local posts (specifically the members of the youth baseball teams) in an effort to sell magazine subscriptions, and that it would provide certain advertising and promotional efforts in literature disseminated to its members. Even assuming, without deciding, that Wooten had the authority to bind appellant and that Wooten and other representatives of appellant did make the alleged statements regarding appellant's planned marketing efforts, there can be no dispute that these were nothing more than statements of hope or enthusiasm of promises as to future events. See *Brady v. Dandridge*, 190 Ga. App. 543, 544-545 (379 SE2d 429) (1989). Appellee concedes it understood that subscriptions were to be sold by the individual posts, and the record is clear that the local posts were autonomous units that could not be ordered by the national organization to perform. There is no evidence that appellant guaranteed the sale of a specific number of subscriptions or even that appellant promised *any* sales, and appellee's witnesses acknowledge they knew the venture was risky with no guarantee of sufficient sales. Even if appellant made every representation alleged by appellee, there was no reliable guarantee of success because the entire scheme hinged upon voluntary acts by third parties not subject to appellant's authority. Although, as appellee contends, fraud may be predicated

upon statements regarding future acts or events when there is either a present intention not to perform or a present knowledge that the future event will not occur, "such exception has no application to this case because the promises upon which the [appellee relies] for establishing fraud were unenforceable even absent any fraud at the time of their utterance." (Citations and punctuation omitted.) *Taylor v. Amisub, Inc.*, 186 Ga. App. 834, 836 (2) (368 SE2d 791) (1988). Consequently, as appellant has pierced appellee's pleadings with regard to essential elements of the fraud claim, and appellee's response did not set forth facts sufficient to support a claim of fraud against appellant, we find the trial court erred by denying summary judgment to appellant on this issue. See *Brady*, supra at 544-545 (1).

3. Appellant next enumerates as error the denial of its motion for summary judgment made on the claim for negligent misrepresentation. That cause of action was recognized in *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503) (1983), and "[s]ince that case approved the Restatement of Torts 2d, § 552 (1977) which sets forth essentially the same five elements to recover as are required for fraud," *Guernsey*, supra at 795 (2(c)), we find that appellant is entitled to summary judgment on this claim as well, and the trial court erred by denying its motion on this issue. See id; see generally *West End Investments*, supra.

4. The final enumeration of error concerns the trial court's denial of summary judgment to appellant on the claim for promissory estoppel. The principle of promissory estoppel is codified at OCGA § 13-3-44 (a), which provides: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." "The principle of promissory estoppel merely provides that, in certain circumstances, the reliance by the promisee or third party upon the promise of another is sufficient consideration, in and of itself, to render the executory promise enforceable against the promisor. [Cit.]" *Loy's Office Supplies v. Steelcase*, 174 Ga. App. 701, 702 (331 SE2d 75) (1985). This principle has no application in the instant case, as the evidence shows that even if appellant made every promise alleged by appellee, there was no basis for appellee to assume that appellant could compel its local posts and their members to sell the magazine subscriptions. Further, the evidence is undisputed that appellant made no promise either to sell enough subscriptions to enable Cohen to pay his printing bill or to pay the outstanding obligation to appellee if Cohen did not. Accordingly, there is no executory promise by appellant to be enforced, see *Loy's Office Supplies*, supra; compare *Knotts Landing Corp. v. Lathem*, 256 Ga. 321, 324 (3) (348 SE2d 651) (1986), and thus appellant was entitled to summary judgment.

*Judgment reversed. Banke, P. J., and Pope, J., concur.*

DECIDED OCTOBER 6, 1989 —
REHEARING DENIED OCTOBER 18, 1989 — 

*Powell, Goldstein, Frazer & Murphy, Frank Love, Jr., Jeffrey W. Kelley, John T. Sparks*, for appellant.
*Kilpatrick & Cody, Everette L. Doffermyre, Jr., K. Christine Harrelson*, for appellee.