A92A1688. BATES & ASSOCIATES, INC. v. ROMEI.
(426 SE2d 919)

BIRDSONG, Presiding Judge.
Bates & Associates, Inc. (Bates) appeals the trial court's order

granting the motion of appellee R. E. Romei d/b/a Structural Technics (Structural) "to dismiss and/or for summary judgment."

Structural brought suit seeking recovery from Bates, a general contractor, and St. Paul Fire & Marine Insurance Company, as surety, under a public contractor's bond, for charges made against Alpha Steel, a Bates' subcontractor, for a shop drawing allegedly furnished to Alpha Steel for its use in the fabrication of steel for Bates' use in building certain warehouses. The shop drawing was provided Alpha pursuant to a sub-subcontract between Alpha and Structural. The payment bond obtained by Bates was issued as required by the "Little Miller Act." See generally OCGA §§ 13-10-1 et seq.; 36-82-100 et seq.

Bates filed a counterclaim against Structural to recover damages sustained as a result of alleged errors in the shop drawing, which caused it to suffer increased overhead, delay damages, and erection expenses. In a nine-page opinion, the trial court dismissed Bates' counterclaim for lack of privity between the parties and because the economic loss rule also applied thereto. Bates asserts the trial court erred in dismissing its counterclaim. *Held*:

1. Review of appellant Bates' counterclaim and amended counterclaim reveals that the claim therein averred is only ex delicto and not ex contractu in nature. The counterclaim and amended counterclaim fail to provide adequate notice of any ex contractu claim, notwithstanding such notice is required by the liberal provisions of the Civil Practice Act. See generally *Bazemore v. Burnet*, 117 Ga. App. 849, 852 (161 SE2d 924). Also, the counterclaim, as amended, contains no averment of wilful misrepresentation on the part of Structural; however, it does reasonably place appellee/defendant on notice of a counterclaim based on negligence arising from alleged misfeasance of duty. See generally *Long v. Jim Letts Olds.*, 135 Ga. App. 293, 294 (2) (217 SE2d 602).

2. The main claim averred in Structural's complaint is grounded on its legal status as a legitimate claimant under the statutory required coverage of the payment bond, as a person supplying labor, materials, machinery, and equipment in the prosecution of the work provided for in the contract between Bates and its subcontractor Alpha Steel (see generally OCGA §§ 13-10-1 (b) (2) (A); 36-82-104 (b)). It is not grounded upon any claim of alleged privity between Bates and Structural arising from the contract entered into between Bates and Alpha Steel. Moreover, we conclude that by promulgating statutory payment bond requirements designed to protect, in addition to all subcontractors, all persons supplying labor, materials, machinery, and equipment in the prosecution of the work provided for in the contract, the General Assembly intended to protect such subcontractors and persons regardless whether they stood in privity with the

prime contractor. OCGA § 36-82-100 (2) (even the term "subcontractor" is not limited to persons having privity of contract with the prime contractor); see also *Tom Barrow Co. v. St. Paul Fire &c. Ins. Co.*, 205 Ga. App. 10 (421 SE2d 85); *Sunderland v. Vertex Assoc.*, 199 Ga. App. 278 (404 SE2d 574). From the posture of the record, we conclude there exists no privity of contract between Bates and Structural, and that the trial court did not err in so holding.

3. Contrary to appellant's contention, citing *Henderson v. General Motors Corp.*, 152 Ga. App. 63 (262 SE2d 238), the Georgia "economic loss rule" is not limited in application to strict liability claims. Compare *McClain v. Harveston*, 152 Ga. App. 422 (263 SE2d 228) and *Chrysler Corp. v. Taylor*, 141 Ga. App. 671 (234 SE2d 123) with *Long*, supra; see *Flintkote Co. v. Dravo Corp.*, 678 F2d 942, 950 (13) (11th Cir.).

4. The Georgia "economic loss rule" in essence prevents recovery in tort when a defective product has resulted in the loss of the value or use of the thing sold, or the cost of repairing it. *Long*, supra at 295 (2); *Flintkote*, supra at 948 (6); accord *Vulcan Materials Co. v. Driltech*, 251 Ga. 383, 387 (3) (306 SE2d 253). (The "cost of repairing the thing sold" is not a concept of narrow application, but includes, inter alia, the cost of modifying the thing sold, that is, the repairing or remedying of a deficiency, to cause the thing to be merchantable or suitable for its intended use.) Under such circumstances, the duty breached is generally a contractual one and the plaintiff is merely suing for the benefit of his bargain. *Vulcan*, supra; *Flintkote*, supra. The rule does not prevent a tort action to recover for injury to persons or to property other than the product itself, because the duty breached in such situations generally arises independent of the contract. *Flintkote*, supra; see *Long*, supra; OCGA § 51-1-11 (a). Nor does the rule preclude recovery for damages to the defective product itself where the injury thereto resulted from accident. *Vulcan*, supra; *Long*, supra; *Flintkote*, supra. But, where there exists no accident, and no physical damage to other property, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing or modifying it, the courts adhere to the rule that purely economic interests are not entitled to protection against mere negligence, and accordingly deny recovery. Id.

5. Bates asserts that even if the economic loss rule applies to tort actions other than those involving strict liability claims, the circumstances of this case bring it within a limited exception to the rule, and thus recovery for any alleged economic injury should be allowed. See generally *Robert & Co. Assoc. v. Rhodes-Haverty &c.*, 250 Ga. 680 (300 SE2d 503).

In *Robert & Co. Assoc.*, supra, the court was confronted with a situation involving the issuance of a report on the condition of a

building, which allegedly contained negligent misrepresentations as to the condition of the building. The engineers issuing the report knew that prospective buyers could rely on the report. In this case, we are confronted with the issuance of a shop drawing and not a condition report. A shop drawing basically is the mechanical process by which the design instructions of the structural engineer are transcribed for use by the fabricating personnel in the steel fabricator's shop. Thus, by its very nature, it is created for the use by a very limited class, that is, steel fabricators. It is against this background that we must examine the precedent of *Robert & Co. Assoc.*, supra, and the trial court's ruling.

In *Robert & Co. Assoc.*, supra at 681-682, the Supreme Court held: "[O]ne who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was *manifestly aware of the use* to which the information was to be put *and intended that it be so used.* This liability is limited to a *foreseeable* person or limited class of persons for whom the information was intended, either directly or indirectly. In making a determination of whether the *reliance* by the third party is justifiable, we will look to the purpose for which the report or representation [or shop drawing] was made. If it can be shown that the representation was made *for the purpose of inducing third parties to rely and act upon the reliance,* then liability to the third party can attach. If such cannot be shown there will be no liability in the absence of privity [which does not exist between appellant and appellee in this case], wilfulness, or physical harm or property damage [as above discussed under the economic loss rule]. The additional duty that this rule imposes may be, of course, limited by appropriate disclaimers which would alert those not in privity with the supplier of information that they may rely upon it only at their peril." (Emphasis supplied.)

In *Gulf Contracting v. Bibb County*, 795 F2d 980, 982 (11th Cir.), the United States Court of Appeals explained a portion of the requirements of *Robert & Co. Assoc.*, supra, thusly: "Privity is not required to support an action for negligent misrepresentation by '(o)ne who, in the course of his business, profession or employment, . . . supplies false information for the guidance of others in their business transactions.' [Cit.] Liability is limited, however, to 'a *foreseeable* person or limited class of persons for whom the information was *intended.*' [Cit.] Those persons must *also* show reasonable *reliance* on the false information, specifically that the information was given for the *purpose of inducing* their reliance." (Emphasis supplied.)

Under the precedent of *Robert & Co. Assoc.*, supra, liability cannot be imposed unless: (a) the maker, as therein defined, who sup-

plied the *false information* was *manifestly aware* of the use to which the information was to be put and *intended* that it be so used (it is not sufficient that the maker should have been aware of the use to which the information was to be put, rather the requirement is that of a *manifest* awareness. That which is manifest is that which is evident to the senses, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with that which is open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident. Black's Law Dictionary (5th ed.)); (b) the recipient of the information was a *foreseeable* person or a member of a limited class of persons for whom the information was *intended*; and (c) the recipient must show reasonable *reliance* on the *false* information and that the information was given *for the purpose of inducing* the third party recipient to rely and act upon the reliance (in this regard, mere reliance by the recipient is insufficient in the absence of the requisite intent of purpose by the maker to induce such reliance). If any of these essential elements are absent, the rule of *Robert & Co. Assoc.*, supra, does not apply, and there will be no liability unless appellant can comply with the requirements of the Georgia economic loss rule or its emergency exception. *Robert & Co. Assoc.*, supra at 682; accord *Gulf Contracting*, supra.

The trial court attempted to distinguish the case at bar from *Robert & Co. Assoc.*, supra, affirming *Rhodes-Haverty &c. v. Robert & Co. Assoc.*, 163 Ga. App. 310 (293 SE2d 876). In doing so, the trial court stated, "in this case, the third party [appellant Bates] did not rely on the 'shop drawings' prepared by [appellee] and furnished to [appellee's] contractual partner, Alpha. Although these drawings . . . were essential to the proper manufacture of the steel ultimately utilized by Bates in the construction of the project, it was Alpha, not Bates, who relied upon these drawings. Therefore, the narrowly drawn exception to the economic loss rule does not apply here." However, the trial court's finding of fact that the shop drawings were not utilized by Bates is directly in contravention of the factual assertion contained in the affidavit of Bates' president that, "these shop drawings were used by Bates . . . in the construction of Warehouse No. 27."

The trial court, as reflected on the face of its order, erroneously distinguished *Robert & Co. Assoc.*, supra, on the basis that Bates did not rely on the shop drawings, and consequently did not apply the test therein prescribed to determine if the very narrow exception to the economic loss rule in *Robert & Co. Assoc.*, applied to the case at bar. Further, the trial court dismissed the counterclaim rather than granting summary judgment notwithstanding that the trial court's order reflects matters outside the pleadings were considered in determining that the Georgia economic loss rule did not apply. See OCGA § 9-11-12. As the issue of applicability of the economic loss rule is

inextricably linked to the issue of privity in the determination as to the viability of appellant's counterclaim, appellee's motion properly should have been treated as a motion for summary judgment, and the standards pertaining thereto applied in reaching disposition of the counterclaim. OCGA § 9-11-56.

Judgment is vacated and the case is remanded to the trial court with direction to reconsider the motion in a manner consistent with this opinion and to re-examine the various assertions of fact contained in the affidavits of record to determine whether the stringent requirements of *Robert & Co. Assoc.*, have been met in this instance.

*Judgment vacated and remanded with direction. Beasley and Andrews, JJ., concur.*

DECIDED JANUARY 13, 1993.

*Ben Kirbo*, for appellant.

*Smith, Curry & Hancock, David A. Dial, John E. Menechino, Jr.*, for appellee.