A93A0896. ADVANCED DRAINAGE SYSTEMS, INC.
v. LOWMAN.
(437 SE2d 604)

POPE, Chief Judge.

Plaintiff/appellant Advanced Drainage Systems, Inc. (ADS) filed suit on an account against defendant/appellee Lloyd Lowman d/b/a Lowman Septic. Lowman answered and counterclaimed against ADS. After a jury trial the trial court granted the plaintiff's motion for directed verdict on its claim against Lowman and the jury returned a verdict in favor of Lowman on his counterclaim against ADS in the amount of $130,000. The trial court entered judgment against ADS in the amount awarded by the jury and denied ADS' motion for new trial. ADS appeals.

Many of the facts pertinent to the underlying counterclaim are

undisputed. ADS manufactures graveless leach bed tubing commonly referred to as SB-2 pipe. That pipe is designed to be used as part of a waste water treatment system to move effluents from the septic tank into the soil. Prior to the introduction of leach bed tubing, gravel systems were exclusively used for that purpose in the area in and around Pierce County, where Lowman engaged in the business of installing septic tank systems.

After SB-2 pipe was approved for use in the Pierce County area, Lowman installed approximately 185 septic tank systems using that product between 1984 and 1988. Of those systems, approximately 25 failed. Lowman claims that the reason those systems failed is the SB-2 pipe is not suitable for use in the Georgia coastal plain area where Pierce County is located, contrary to ADS' assurances otherwise. Lowman further testified that when these systems began to fail he contacted the ADS salesperson with whom he had dealt and the salesperson told him to fix those systems and ADS would reimburse him. Lowman repaired several of the systems but was not reimbursed by ADS.

Viewing the evidence in the light most favorable to support the verdict, the jury was also authorized to find from the evidence that ADS through its agents and brochures represented that the SB-2 pipe could be used in all types of site conditions where gravel systems are permitted. Evidence was presented by Lowman that the soil conditions and high water table in the area where Lowman installed the SB-2 pipe were such that a system using SB-2 pipe would not function properly without special site preparation.

1. ADS contends Lowman's claim for damage to reputation is unsupported by the evidence because there was no showing of wanton or wilful misconduct by ADS. Contrary to Lowman's contention otherwise, our review of the record reveals that this issue was properly raised at trial.

"[D]amages for injury to reputation . . . are generally not recoverable in an action premised on mere negligence where no physical injury is suffered by the plaintiff, unless the elements of willfulness or wantonness have entered into the case." *Hamilton v. Powell, Goldstein, Frazer & Murphy,* 167 Ga. App. 411, 415 (2) (306 SE2d 340) (1983), aff'd 252 Ga. 149 (311 SE2d 818) (1984). Lowman does not contend and there is no evidence that he suffered physical injury as the result of ADS' actions relating to this case. Lowman contends, however, that there is evidence of wilful and wanton conduct in this case because he presented evidence that ADS knew SB-2 pipe would not work in the Pierce County area but despite that knowledge misrepresented that a pipe system would work as well as the conventional gravel system in meetings with health officials, Lowman, and at least one of Lowman's customers. A review of the record reveals that

when ADS began to sell SB-2 pipe in the Pierce County area in either 1983 or 1984 it had no knowledge that there would be a problem with use of that system in the type soil found there. The evidence showed that the only study available in 1984 concerning how the SB-2 systems performed was a study conducted by B. L. Carlile in Montgomery County, Texas in 1981. In that study only one system was observed in Leefield-type soil (fine sand), which is the type soil present in Pierce County. The results of the Texas study indicated only a minor problem with use of such a system. The Texas study also showed that high water tables negatively effected the performance of the SB-2 pipe system but that factor was more critical in evaluating the effectiveness of conventional systems. In fact, the claim that Lowman contends was false and constitutes the basis for his claim of fraud against ADS is contained in the conclusion of that report; that is, where conventional systems function satisfactorily so should systems using SB-2 pipe.

Although the actual study was not made a part of the record, oral evidence was presented that ADS commissioned a study by the same person who conducted a study in 1984 of the use of SB-2 systems in the north Florida area, where fine sand-type soil is prevalent as in the Pierce County area. The results of that study were made available to ADS in 1987 and it concluded that in areas in which fine sand was found the pipe systems had to be made 20 percent longer before they would function properly. No evidence was presented that the misrepresentations upon which Lowman and others allegedly relied were made after 1987 when ADS had knowledge of the problems associated with the use of SB-2 pipe in areas where fine sand is found. Thus, the record does not support a finding of wanton and wilful conduct by ADS. Lowman's claim for damage to reputation should not have been presented to the jury. Under the facts of this case, this cannot constitute harmless error; therefore, ADS is entitled to a new trial.

2. We will address ADS' remaining enumerations of error which are capable of repetition on remand. ADS contends Lowman's tort claims are barred by the economic loss rule. Lowman argues the economic loss rule is not applicable because he suffered personal injury in the form of reputation damage. That argument is controlled by our holding in Division 1, supra.

The economic loss rule provides that absent personal injury or damage to property other than to the allegedly defective product itself an action in negligence does not lie and any such cause of action may be brought only as a contract warranty action.[1] *Long v. Jim*

---

[1] The economic loss rule does not bar actions for damages to injuries to persons and other property. *Bates & Assoc. v. Romei*, 207 Ga. App. 81, 83 (4) (426 SE2d 919) (1993).

*Letts Oldsmobile*, 135 Ga. App. 293 (217 SE2d 602) (1975). The rationale underlying this rule is that when a defective product has resulted in the loss of the value or use of the product itself, or the cost of repairing it, the plaintiff is merely suing for the benefit of his bargain. *Vulcan Materials Co. v. Driltech*, 251 Ga. 383, 387 (306 SE2d 253) (1983). Two exceptions exist to this general rule: (1) the accident exception, which allows a plaintiff to recover in tort when there is a sudden and calamitous event that not only causes damage to the product but poses an unreasonable risk of injury to persons and other property, *Vulcan Materials Co.*, 251 Ga. at 388; and (2) the misrepresentation exception, which was defined by our Supreme Court as follows: "[O]ne who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly." *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 681-682 (300 SE2d 503) (1983). In setting forth the second exception our Supreme Court " 'approved the Restatement of Torts 2d, § 552 (1977) which sets forth essentially the same five elements to recover as are required for fraud.' "[2] *American Legion v. Foote & Davies, Inc.*, 193 Ga. App. 225, 228 (3) (387 SE2d 380) (1989) (quoting *Guernsey Petroleum Corp. v. Data Gen. Corp.*, 183 Ga. App. 790, 795 (2) (c) (359 SE2d 920) (1987)).

Assuming without deciding that a claim based on the misrepresentation exception can arise from an underlying sale of goods, we reject Lowman's contention that the misrepresentation exception set forth in *Robert & Co. Assoc.* is applicable in this case. As we recently noted in *Bates & Assoc. v. Romei*, 207 Ga. App. 81, 84-85 (426 SE2d 919) (1993), before liability can attach under the misrepresentation exception *false* information must be provided to a foreseeable person that the supplier of the information was manifestly aware would use the information and that foreseeable person must rely upon the information to their detriment. As we discussed above the record does not support Lowman's claim that ADS knew its representation concern-

---

[2] The Restatement of Torts 2d, 552 (1977) provides in pertinent part: "(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Robert & Co.*, 250 Ga. at 681, n. 1.

ing how the SB-2 pipe could be used in the soil conditions existing in and around Pierce County was false at the time the alleged misrepresentations were made.

3. As this case is remanded for retrial, we will not address ADS' argument that Lowman's damages should be limited to the actual costs he incurred repairing the failed SB-2 pipe systems. At trial Lowman may present evidence of incidental and consequential damages as well. OCGA § 11-2-715.

*Reversed and remanded with direction. Birdsong, P. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 10, 1993 —
RECONSIDERATION DENIED NOVEMBER 3, 1993.

*Dillard, Bowers & East, Daniell S. Landers*, for appellant.
*Douglas L. Gibson*, for appellee.