A01A1380. LIBERTY NATIONAL LIFE INSURANCE COMPANY v. RADIOTHERAPY OF GEORGIA, P.C. et al.
(557 SE2d 59)

BLACKBURN, Chief Judge.

Seeking injunctive and declaratory relief and damages for misrepresentation, Liberty National Life Insurance Company ("Liberty National") sued Radiotherapy of Georgia, P.C. ("Radiotherapy") and Atlanta Oncology Associates, P.C. d/b/a Cancer Center of Gwinnett, Middle Georgia Radiation Oncology, LLC, Hematology & Oncology of N.E. Georgia, P.C., and Cherokee Cancer Center, P.C. (collectively "Atlanta Oncology"). Liberty National's complaint centered on allegations that these medical providers had improperly billed Liberty National's policyholders. After the trial court awarded summary judgment to Radiotherapy and Atlanta Oncology, Liberty National then filed this appeal, primarily arguing that the trial court failed to consider whether the billed charges of these medical providers were

negligently represented as being reasonable. After review, we find no error and affirm.

Liberty National issues cancer policies which provide insurance benefits for certain expenses incurred for cancer treatment. These policies do not require the coordination of benefits with Medicare or with other insurers. Under the terms of these cancer policies, Liberty National makes direct payments to its insureds unless those benefits have been assigned to a medical provider. Typically, Liberty National pays the insurance benefits based upon the amount billed by the provider, subject to that amount being reasonable and customary. The Liberty National policy at issue provides in pertinent part:

> The benefits specified below cover expenses incurred in the hospitalization or treatment of cancer. Such expenses will consist of the actual charges by the hospital, physician, or other providers, subject to the limitations contained herein. No benefits will be paid in excess of the usual and customary charges made by the provider of services or treatments.

After paying its insureds under their cancer policies, Liberty National allegedly discovered that it was having to pay more than the health care providers were permitted to charge their patients under limitations imposed by Medicare. Liberty National then sued the medical providers, complaining that their billing statements for services issued to patients included amounts not subject to Medicare reimbursement. In other words, Liberty National claimed that the billing statements included amounts in excess of Medicare fee schedules for the described services, amounts that the health care providers were foreclosed by federal law from recovering.[1] The crux of Liberty National's complaint was that Liberty National was being required to pay excess amounts that the providers were contractually prohibited by federal law from collecting. As a result of these billing practices, Liberty National sought injunctive and declaratory relief as well as damages.

Raising several theories of defense, Atlanta Oncology filed motions for judgment on the pleadings, to dismiss for failure to join indispensable parties, and for summary judgment. The trial court granted Atlanta Oncology's motion for summary judgment. Without explaining its rationale for doing so, the trial court also granted Radiotherapy's separate motion for summary judgment.

---

[1] All issues in the underlying litigation relate exclusively to Liberty National's insureds who have Medicare coverage. Liberty National wanted to process the claims of policyholders who became eligible for Medicare differently from the claims of those who did not have Medicare coverage.

1. Liberty National contends that the trial court erred by refusing to consider that the "billed" charges of Radiotherapy and Atlanta Oncology were in excess of the amounts that they expected to receive in payment, were more than the Medicare-allowed amount, and were "negligently represented as being reasonable." Liberty National asserts that, for Medicare-eligible patients, the "reasonable" charge for services within the meaning of its cancer policies must be identical to the amount determined by Medicare statutes and regulations. Liberty National claims that any billing in excess of the Medicare fee schedule must be considered "in excess of the reasonable and customary charges made by the provider of services or treatments," and, therefore, not payable under the terms of the cancer policies. See *Liberty Nat. Life Ins. Co. v. Allen.*[2]

Before addressing these specific arguments, we find that Liberty National's claims fail as a matter of law for two reasons. First, Liberty National failed to offer any evidence of reasonable reliance upon the so-called representations made by Radiotherapy and Atlanta Oncology, and second, the voluntary payment doctrine precludes any recovery.

Liberty National's Count 2 alleged misrepresentation or fraud. Both of these torts, however, require proof of justifiable reliance on the part of the plaintiff. *Consulting Constr. Corp. v. Edwards.*[3] See *Crawford v. Williams.*[4] To survive summary judgment, Liberty National had to offer proof that it exercised its duty of due diligence. *Williams v. Fallaize Ins. Agency.*[5] Thus, assuming for the sake of analysis only that Radiotherapy and Atlanta Oncology provided misinformation to Liberty National, Liberty National had to show that it exercised due diligence in relying upon that information. See id.

But Liberty National's own fact witnesses and other evidence demonstrate the contrary. The evidence shows that Liberty National knew as early as 1993 that there were often discrepancies between the actual charges of health care providers and the allowable charges under Medicare. In August 1993, Liberty National instituted a new procedure in Alabama for paying claims on cancer policies of policyholders who were Medicare recipients. *Allen,* supra. Under a new procedure known as the "Medicare Allowable Claims Practice," the amount of benefits that Liberty National "would pay a Medicare participant covered by the cancer policy would be the maximum amount

---

[2] *Liberty Nat. Life Ins. Co. v. Allen,* 699 S2d 138 (Ala. 1997).
[3] *Consulting Constr. Corp. v. Edwards,* 207 Ga. App. 296, 298 (1) (427 SE2d 789) (1993) (action for misrepresentation requires proof of reasonable reliance upon defendant's false representations).
[4] *Crawford v. Williams,* 258 Ga. 806 (375 SE2d 223) (1989).
[5] *Williams v. Fallaize Ins. Agency,* 220 Ga. App. 411, 413 (1) (469 SE2d 752) (1996).

a medical provider was allowed to charge Medicare recipients for the particular treatment." Id. at 139. In November 1993, Liberty National rescinded the new practice after encountering customer complaints, reimbursement problems, and in anticipation of the cost of potential litigation. Id. at 140.

Michael W. Bryant, Manager of Accident and Health Claims for Liberty National, admitted knowing that the amount billed by health care providers and the amount Medicare considers reasonable were often at variance. Bryant conceded that it had been Liberty National's own choice not to reinstitute the pre-*Allen* procedure of denying insurance benefits that exceeded the amount of the Medicare fee. Linda Davis, also a designated representative of Liberty National, testified that the amount allowed by Medicare for any procedure in a particular area could be ascertained just by placing a telephone call. In addition, the record shows without dispute that information on Medicare fee schedules is published and available from the Federal Register or through the Commerce Clearing House or via the Internet. Since Liberty National knew that Medicare reimbursement and actual fees were two distinct amounts and could have ascertained the actual information for any medical procedure had it troubled itself to do so, Liberty National cannot show that it exercised due diligence. Therefore, Radiotherapy and Atlanta Oncology were entitled to judgment as a matter of law. See *Edwards*, supra at 298.

Notwithstanding Liberty National's claim to the contrary, the same result would be reached upon the voluntary payment rule. Under the voluntary payment doctrine,

> [p]ayments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule prescribed in this Code section.

OCGA § 13-1-13. As a general rule, a payment made through ignorance of law and in the absence of fraud is deemed voluntary and is not recoverable. *Decatur Fed. Sav. &c. Assn. v. Gibson.*[6] This statute applies both to one who pays money with knowledge of all the facts and to one who pays by mistake without a valid reason for failing to

---

[6] *Decatur Fed. Sav. &c. Assn. v. Gibson*, 268 Ga. 362, 363 (1) (489 SE2d 820) (1997).

ascertain the truth. *Gulf Life Ins. Co. v. Folsom.*[7] Under the voluntary payment doctrine, the party seeking recovery must prove that the payment was not voluntarily made because certain material facts were not known at the time of payment or a valid reason existed for failure to determine the truth. *Ins. Co. of North America v. Kyla, Inc.*[8] Thus, Liberty National's claim for "negligent representation" must fail as a matter of law, *unless* the limited exception set forth in *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*[9] is applicable. In that case, the Supreme Court observed:

> Courts have been reluctant to extend liability in negligent misrepresentation cases where no privity appears and where the loss was merely economic and involving neither physical harm nor injury to property. An exception has been carved out in those cases where a known third party's reliance was the desired result of the representation.

*Robert & Co. Assoc.*, supra at 681. But even in these third-party reliance situations, the third party must establish that the defendant made the representation for the purpose of inducing reliance and action upon that representation. Id. at 682. Absent the requisite showing, no liability can attach "in the absence of privity, willfulness or physical harm or property damage." Id.

Here, Liberty National failed to offer any evidence that Radiotherapy or Atlanta Oncology incorporated false, inaccurate, or misleading information into their billing statements in an attempt to induce Liberty National to rely and act to its detriment upon that information. No evidence shows that Radiotherapy or Atlanta Oncology desired Liberty National to rely on the billing statements that Liberty National repeatedly characterizes as "misrepresentations." Nor has Liberty National demonstrated that the information was "false" or that Radiotherapy and Atlanta Oncology purposefully induced Liberty National to rely on such information. Liberty National's argument is further undercut by its agreement to stipulate that none of these providers retained any funds that were paid on behalf of any insurance claims and that any amount in excess of the Medicare reimbursement went to the patient (the policyholder). Because Liberty National failed to offer proof that it exercised due diligence, it cannot prevail even under this narrow exception. See *Robert & Co. Assoc.*, supra.

---

[7] *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 401 (349 SE2d 368) (1986).

[8] *Ins. Co. of North America v. Kyla, Inc.*, 193 Ga. App. 555, 556 (388 SE2d 530) (1989).

[9] *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 681 (300 SE2d 503) (1983).

2. Liberty National contends that the trial court erred if that court based its ruling on a determination that Liberty National failed to exercise due diligence because due diligence was not required. As determined in Division 1, Liberty National's failure to offer proof of this essential element of its claim for misrepresentation was fatal. *American Legion v. Foote & Davies, Inc.*[10]

3. Liberty National asserts that its claim for declaratory relief presents a justiciable controversy and seeks judicial determination that under its policies, the meaning of "reasonable charges" for Medicare-covered patients is the amount determined by Medicare statute and regulation. Insurance, however, is a matter of contract and is controlled by contract law. *Nat. Security Fire &c. Co. v. London.*[11] Liberty National was the drafter of the policy language at issue, and the policy terms must be construed against Liberty National and in favor of the insureds. *Cole v. Life Ins. Co. &c.*[12] Since the cancer policies do not contain a definition of "reasonable and customary charges," that language must be construed against Liberty National as the insurer. See *Hurst v. Grange Mut. Cas. Co.*[13] In any event, the policyholders are not parties to the underlying action, and no justiciable controversy exists between Liberty National and these parties.[14] See *Farm &c. Life Ins. Co. v. Skelton.*[15] Since Liberty National has presented no viable claims against Radiotherapy or Atlanta Oncology, no further direction from the trial court is needed. *Watts v. Promina Gwinnett Health System.*[16]

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 21, 2001.

*Speed & Seta, J. Wallace Speed, Lesli R. Seta,* for appellant.
*Jones, Day, Reavis & Pogue, Robert M. Martin, Ruth H. Gershon, Gambrell & Stolz, Seaton D. Purdom, Linda A. Klein, Winburn, Lewis & Barrow, Gene Mac Winburn, John J. Barrow,* for appellees.

---

[10] *American Legion v. Foote & Davies, Inc.*, 193 Ga. App. 225, 227 (2) (387 SE2d 380) (1989) (party must make inquiry and ascertain the truth for himself).

[11] *Nat. Security Fire &c. Co. v. London*, 180 Ga. App. 198, 200 (2) (348 SE2d 580) (1986).

[12] *Cole v. Life Ins. Co. &c.*, 236 Ga. App. 229, 230 (511 SE2d 596) (1999).

[13] *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996).

[14] Although Liberty National stipulated that none of these medical providers retained any money paid out by Liberty National on the cancer policies, no evidence suggests that Liberty National sought to recover the money from its policyholders.

[15] *Farm &c. Life Ins. Co. v. Skelton*, 235 Ga. App. 507, 509 (510 SE2d 76) (1998).

[16] *Watts v. Promina Gwinnett Health System*, 242 Ga. App. 377, 382 (5) (530 SE2d 14) (2000).