[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14971
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-03235-MLB


NOUNE KALPAKCHIAN,

                                        Plaintiff - Appellant,

versus

BANK OF AMERICA CORPORATION,
d.b.a. Bank of America, N.A.,
WELLS FARGO BANK, N.A.,

                                        Defendants - Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 15, 2020)

Before MARTIN, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Noune Kalpakchian appeals from the district court's order dismissing her complaint with prejudice. In her complaint, she seeks to recover hundreds of thousands of dollars from Bank of America Corporation d/b/a Bank of America, N.A. as well as Wells Fargo Bank, N.A. Her claims related to funds she requested be wired from her account. After careful review, we affirm the district court's order dismissing Kalpakchian's claims against Bank of America. However, we reverse and remand this case with instructions that the district court grant Kalpakchian leave to amend her negligence claim against Wells Fargo.

## I.

Kalpakchian has been a Bank of America customer for decades. In 2017, someone presented Kalpakchian with a business opportunity that required her to wire large sums of money in three separate wire transfers. On the first day, Kalpakchian asked Bank of America to wire $108,000 from one of her personal accounts to another Bank of America account. The next day, she told Bank of America to wire $192,000 from the same personal bank account to another Bank of America account. The day after that, she had the bank wire $149,000 from her personal account to an account at Wells Fargo. After a couple of days, she realized she may have been defrauded. She called Bank of America's fraud department by phone and went to a local branch to ask the bank to cancel the transfers. Kalpakchian followed up with the bank's fraud department for several days to

2

make sure it knew about the fraud as well as her demand to cancel the transfers. The wired funds were not returned to her account.

Kalpakchian filed suit against both Bank of America and Wells Fargo to recover her money. She originally brought her case in the State Court of Gwinnett County, Georgia, but Defendants removed the suit to federal court. The theory of her case is that Bank of America and/or Wells Fargo had control of her money as a result of the transfers when she alerted Bank of America of the fraud and asked the bank to investigate the fraudulent activity and return the wired funds to her account. She alleges that neither bank ever sent the money to the intended recipients (that is, the perpetrators of the fraud) and that they have not taken all measures necessary to facilitate the return of her money. Kalpakchian brought three claims: (1) breach of contract against Bank of America; (2) negligence against both Bank of America and Wells Fargo, and (3) recovery of attorneys' fees under Georgia law. Defendants moved to dismiss Plaintiff's complaint for failure to state a claim.

To their motion to dismiss, Defendants attached the signed account cards for Kalpakchian's two Bank of America accounts, along with the deposit agreement Bank of America said Kalpakchian agreed to. Defendants also provided an authenticating affidavit that the deposit agreement "governed Plaintiff's Bank of America accounts at the time of the transactions here." In the deposit agreement,

3

Kalpakchian "acknowledge[d] and agree[d] that [her] account . . . will be governed by the terms and conditions set forth in the opening documents, including the Deposit Agreement . . . ."

The district court granted Defendants' motion to dismiss. It held that Kalpakchian failed to state a breach of contract claim because, in the deposit agreement, she "specifically disclaimed" any obligation Bank of America had to cancel the wire transfers she authorized. The district court also dismissed both negligence claims on the grounds that Kalpakchian's negligence claim against Bank of America was barred by Georgia's economic loss doctrine, and her negligence claim against Wells Fargo failed because she had not shown any duty Wells Fargo owed her. Finally, the district court denied Kalpakchian's motion for leave to amend, and dismissed the complaint with prejudice, stating that the facts underlying her allegations made any amendment futile. Kalpakchian appeals the dismissal, with prejudice, of her complaint.

## II.

The district court dismissed each of Kalpakchian's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. We review de novo a district court's decision on a motion to dismiss, accepting well-pleaded allegations in the complaint as true and construing them in the light most favorable to the plaintiff. Hunt v. Aimco Props., L.P., 814 F.3d 1213, 1221 (11th Cir. 2016). To

state a claim, a complaint must include "enough facts to state a claim for relief that is plausible on its face." Id. (quotation marks omitted). A complaint is facially plausible when there is sufficient factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotation marks omitted).

"We review the district court's refusal to grant leave to amend for abuse of discretion, although we exercise de novo review as to the underlying legal conclusion that an amendment to the complaint would be futile." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1336 (11th Cir. 2010).

## III.

### A. THE DISTRICT COURT'S CONSIDERATION OF THE DEPOSIT AGREEMENT WAS PROPER.

Kalpakchian devotes much time arguing the district court erred by considering the deposit agreement at the motion to dismiss stage. The deposit agreement is an extrinsic document, and for purposes of Rule 12(b)(6) review, a court generally may not look beyond the pleadings. U.S. ex rel. Osheroff v. Humana Inc., 776 F.3d 805, 811 (11th Cir. 2015). However, a district court may consider an extrinsic document when deciding a motion to dismiss for failure to state a claim "if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." Id. The district court found the Defendants satisfied both requirements for consideration of the deposit agreement here. Kalpakchian argues

5

this finding results from three errors: the district court (1) "presumed" that the agreement was central to the her complaint "merely because she alleged a 'contractual relationship' and the deposit agreement existed"; (2) made challenging the agreement's authenticity "virtually impossible" by denying discovery; and (3) "ignored the possibility that the deposit agreement did not apply as proffered." We are not persuaded by these arguments, and uphold the district court's ruling as to both the centrality and authenticity of the deposit agreement. We'll discuss the latter requirement before turning to the former.

    1. <u>Kalpakchian Did Not Challenge the Authenticity of the Deposit Agreement.</u>

Kalpakchian claims that, by not allowing discovery about whether the deposit agreement was authentic, the district court "essentially dared her to accuse the Defendants' declarant of lying when she had no basis for assessing credibility." Kalpakchian overstates the requirement for disputing the authenticity of a document.

A plaintiff can dispute the authenticity of a document simply by saying that the proffered document is not the one referred to in her complaint. See Horsley v. Feldt, 304 F.3d 1125, 1135 (11th Cir. 2002) ("In his response to the motion for judgment on the pleadings, . . . Horsley disputes the authenticity of those transcripts; he says that neither one is the transcript referred to in his complaint."). Kalpakchian makes this argument on appeal, explaining that the deposit

6

agreement, dated in 2017, does not reflect the terms she actually agreed to when she opened her accounts in 1998 and 2014.  But she did not make this argument before the district court.  Indeed, she said only that she "does not stipulate to the authenticity of the [deposit agreement] at this stage of the case as [she] is unable, without discovery, to determine whether such documents are what they purport to be."  She acknowledges as much in this appeal.  See Appellant's Br. at 8 ("The Plaintiff disputed the document's centrality to her allegations but could not dispute its authenticity without discovery.").

To inform the district court that the document could not properly be considered at the motion to dismiss stage, Kalpakchian was required to dispute the document in some way.  Because she did not, she cannot now challenge the district court's authenticity finding on appeal.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

      2.  Kalpakchian Admitted the Deposit Agreement Is Central to Her Claims.

Kalpakchian argues that the deposit agreement was not central to her complaint and that the district court erred by holding it was the contract she was relying on "merely because it exists."  A document, by definition, is central to a complaint when it is "a necessary part of [a plaintiff's] effort to make out a claim."

7

Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).  Here, the contract governing the contractual relationship Kalpakchian alleges Defendants breached goes to "the very heart" of her contract claim.  Id.  Indeed, this Court has previously recognized that relationship-forming contracts, such as "account opening documents," are central to a plaintiff's claim.  SFM Holdings, 600 F.3d at 1337.

Kalpakchian does not appear to dispute this.  Instead she argues that the district court improperly "drew an inference" that the deposit agreement "was the source of the 'contractual relationship'" alleged in her complaint.  She explains that there is no evidence the 2017 deposit agreement, which "change[s] from time to time," reflects the terms she agreed upon.  The problem with her argument is that she did not raise it before the district court.  Rather, in her response to Defendants' motion to dismiss, Kalpakchian admitted that her complaint "generally references the Deposit Agreement" and that "the contract is central to [her] claim against [Bank of America] for breach of contract."  She did not argue that another version existed, or that the 2017 version proffered by the Defendants did not govern her claims.  Instead, she challenged the meaning of the deposit agreement, saying the "contents of the Agreement are currently in dispute," and that there was a dispute over the interpretation of the deposit agreement.

8

Because Kalpakchian admitted the deposit agreement was central to her breach of contract claim and did not dispute its authenticity, the district court properly considered it.

Now we turn to the merits of Kalpakchian's contract claim.

B. THE DISTRICT COURT'S INTERPRETATION OF THE DEPOSIT AGREEMENT WAS PROPER.

Kalpakchian argues that the district court did not correctly interpret the deposit agreement. She says the district court ignored the good faith and fair dealing provision, as well as Georgia law saying a bank cannot disclaim its responsibility for "its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure."[1] Appellant's Br. at 31 (citing O.C.G.A. § 11-4-103). Kalpakchian also says the district court erred when it did not interpret the contract as contradicting itself.

The deposit agreement has a section covering "Sending Funds Transfers," which "applies to wire transfers." That section contains a subsection describing the parties' agreement for "Amending or Canceling Payment Orders." It says:

> You may not amend or cancel a payment order after we receive it. If you ask us to do this, we may make a reasonable effort to act on your request. But we are not liable to you if, for any reason, a payment order is not amended or canceled.

---

[1] The parties do not dispute that Georgia law governs Kalpakchian's claims.

9

The district court held this provision "places the risk for any fraudulent payment on Plaintiff." We agree. The plain terms of the deposit agreement, which Kalpakchian admitted governs her relationship with Bank of America, say she cannot make changes to a wire transfer after the bank receives it. Bank of America "may" try to adhere to a request to change the wire transfer, but is not liable for any completed transfers that Kalpakchian requested.

Bank of America did not breach the contract it had with Kalpakchian and the district court properly dismissed her breach of contract claim.

**IV.**

Next, Kalpakchian argues the district court erred by dismissing her negligence claims. The district court dismissed her negligence claim against Bank of America because it found it barred by the economic loss doctrine. It dismissed the claim against Wells Fargo because it found Wells Fargo did not owe her a duty as a matter of law.

We first address Bank of America. The economic loss doctrine says that "absent personal injury or damage to property other than to the allegedly defective product itself an action in negligence does not lie and any such cause of action may be brought only as a contract warranty action." Advanced Drainage Sys., Inc. v. Lowman, 437 S.E.2d 604, 607 (Ga. 1993). Kalpakchian claims this rule does not apply for two reasons: (1) her "losses are not the subject of any contract with Bank

of America,"[2] and (2) her claim falls within an exception to the economic loss

rule.  We disagree.

It is clear that Kalpakchian's negligence claim against Bank of America is

barred by the economic loss doctrine.  Contrary to her argument, her negligence

claim is based on their contract.  Indeed, Kalpakchian's negligence claim is based

on the exact same conduct as her contract claim: Defendants maintain control of

the wired funds and have not returned them into her account.  She has not alleged

any personal injury or property damage, claiming only that she suffered "harm in

the amount of $344,000 and such other amounts as proven at trial."  This falls

squarely within the economic loss rule.

No exception to the rule applies here.  In Georgia, there are two exceptions

to the economic loss rule: "(1) the accident exception, which allows a plaintiff to

recover in tort when there is a sudden and calamitous event that not only causes

damage to the product but poses an unreasonable risk of injury to persons and

other property; and (2) the misrepresentation exception," which allows a plaintiff

to recover for intentional misrepresentations.  See Lowman, 437 S.E.2d at 607

(citation omitted).  Kalpakchian suggests a third exception here, arguing that the

---

[2] Kalpakchian also argues the economic loss doctrine does not apply to her negligence claim against Wells Fargo because she never entered into a contract with Wells Fargo.  However, the district court's dismissal of her claim against Wells Fargo was not based on the economic loss doctrine.

11

economic loss rule does not bar a tort claim that is based on a recognized independent duty of care.  See Orkin Exterminating Co. v. Stevens, 203 S.E.2d 587, 590 (Ga. Ct. App. 1973) ("[A] single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him.").

The problem with this argument is that Kalpakchian has not identified any independent duty Bank of America owed her.  The only duty she claims Bank of America failed to perform is the duty "to exercise due care and diligence" in making payments out of her account and "in cancelling and returning the Wired Funds that were in its control."  Because the deposit agreement expressly covers "amend[ed] or cancel[ed] payment orders" received after the submitted payment order, and limits liability "if, for any reason, a payment order is not amended or canceled," Kalpakchian's negligence claim is purely contractual.  The economic loss doctrine therefore bars her claim.  See Orkin, 203 S.E.3d at 591 (holding that alleged duty to treat premises and control renewed termite infestation was really "a case of nonperformance of a contract obligation").

Next we turn to Kalpakchian's negligence claim against Wells Fargo.  The district court said Kalpakchian never pointed to any duty requiring Wells Fargo to return her funds.  A "duty, or obligation, recognized by law, requiring the actor to

conform to a certain standard of conduct, for the protection of others against unreasonable risks" is the first element of a negligence claim. Marquis Towers, Inc. v. Highland Grp., 593 S.E.2d 903, 906 (Ga. Ct. App. 2004). We must therefore determine if Wells Fargo owed Kalpakchian a duty of care.

Kalpakchian says Section 11-4-103 of the Georgia Code sets out a statutory duty owed by Wells Fargo. However, Kalpakchian did not argue before the district court that Wells Fargo owed her any duty under this statute. Instead, she argued that Wells Fargo owed her a statutory duty under O.C.G.A. § 11-4A-404, which she says makes a cancellation effective "when 'the order was issued because of a mistake by a sender in the funds transfer which resulted in the issuance of a payment order' that 'orders payment to a beneficiary not entitled to receive payment from the originator.'" R. Doc. 15 at 19 (citing O.C.G.A. § 11-4A-404). But this is not what § 11-4A-404 says, and Kalpakchian has not repeated this argument before us on appeal.

Rather, here she relies only on § 11-4-103(a). That statute provides that "the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure." O.C.G.A. § 11-4-103(a). But because Kalpakchian acknowledges she does not have a contractual relationship with Wells Fargo, § 11-4-103(a) fails

13

to establish any duty Wells Fargo owes her.  The district court did not err by denying her negligence claim against Wells Fargo.

## V.

Finally, Kalpakchian argues the district court abused its discretion by denying her leave to amend her complaint.  She says amending her complaint would not be futile because of "the arguments contained in Sections I, II, and III" of her opening brief on appeal.  We have already determined that Kalpakchian's claims against Bank of America fail as a matter of law.  And because those claims are insufficient as a matter of law, the district court did not abuse its discretion in denying Kalpakchian's motion for leave to amend as futile—at least as to Bank of America.  Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999).

The negligence claim against Wells Fargo is a different story.  The district court "determined that Plaintiff's complaint, as currently drafted, lacks merit," and concluded that any amendment would be futile.  The district court purportedly found that Kalpakchian's negligence claim was futile based on the general rule that banks do not owe a duty of care to non-customers.  However, this general principle has exceptions.  See Chang v. JPMorgan Chase Bank, N.A., 845 F.3d 1087, 1095 (11th Cir. 2017) (holding the claims of a non-customer plaintiff were sufficient to establish the bank owed him a duty under Florida law).  We cannot say that a more carefully drafted complaint would be insufficient as a matter of law, and therefore

14

"would still be properly dismissed."  Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (quotation marks omitted).  Rather, because Kalpakchian "might state a claim" against Wells Fargo for negligence, the district court abused its discretion by denying her a chance to amend that claim.  Woldeab v. Dekalb Cnty. Bd. of Educ., 885 F.3d 1289, 1291, 1292 (11th Cir. 2018) (emphasis added).

**AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART.**