## A03A1420. MARTHA H. WEST TRUST v. MARKET VALUE OF ATLANTA, INC.
## A03A1421. MARTHA H. WEST TRUST v. DANIEL FRIES & ASSOCIATES, INC.
### (584 SE2d 688)

PHIPPS, Judge.

Clayton and Martha West, as co-trustees of the Martha H. West Trust, bought a condominium from James and Joanne Ryan, after James Ryan had the property appraised by Market Value of Atlanta, Inc. (Market Value) and by Daniel Fries & Associates, Inc. (Fries). The Wests brought this suit, claiming that James Ryan had fraudulently induced them to purchase the property. The Wests charge Market Value and Fries with professional negligence in grossly overinflating the value of the property in their appraisals. In Case No. A03A1420, the Wests appeal the trial court's grant of summary judgment to Market Value. In Case No. A03A1421, the Wests appeal the grant of summary judgment to Fries. Under the authority of *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*,[1] we affirm in both cases.

Clayton West and James Ryan had been business partners. In consideration of West's payment of partnership debts, Ryan gave West a $120,000 second mortgage interest on a condominium known as 201 Dunwoody Chase in Atlanta. Ryan later agreed to let West purchase the condominium based on its fair market value as determined by the lower of two appraisals to be performed on the property.

Ryan obtained the appraisals from Market Value and Fries. It is undisputed that Ryan first contacted Market Value and said he was thinking about selling the condominium and wanted to "get an idea of a possible sale price for his property if he decided to sell it." According to Fries, Ryan requested it to perform an appraisal "because he was considering selling the property and desired information regarding its fair market value." But the Wests presented evidence that Ryan's attorney also contacted Fries and told the company that the appraisal was going to be used to determine the price at which the property would be sold. It is undisputed that neither Market Value nor Fries was informed that Ryan was actually in the process of selling the condominium to the Wests or anyone else. Market Value and Fries appraised the property at $260,000 and $275,000, respectively. Each appraisal report contained a provision requiring the appraiser to give its prior written consent before Ryan could distribute the report (including conclusions about property value) to anyone other than various specified entities, one of which was "the borrower's [(i.e., Ryan's)] mortgagee or its successors and assigns."

---

[1] 250 Ga. 680 (300 SE2d 503) (1983).

West and Ryan agreed upon a purchase price for the condominium based on Market Value's $260,000 appraisal. The Wests subsequently spent $15,000 making improvements to the property and then attempted to sell the condominium for $295,000. When no offers were forthcoming, the Wests' real estate agent informed them that the condominium had a fair market value of only around $235,000. The property eventually sold for $228,000.

The Wests then brought this suit against the Ryans, Market Value, and Fries. The Wests alleged that Ryan had fraudulently induced the appraisers to grossly overinflate the value of the properties. Based on this allegation, the Wests filed a claim against the appraisers for professional negligence.

1. "In order to maintain a cause of action for ordinary or professional negligence, a plaintiff must prove the following elements: (1) a legal duty to conform to a standard of conduct; (2) a breach of this duty; (3) a causal connection between the conduct and the resulting injury; and (4) damage to the plaintiff. [Cits.]"[2]

In order to prevail on summary judgment, the moving party must demonstrate that there are no genuine issues of any material fact and that the undisputed facts, viewed in a light most favorable to the nonmoving party, support a judgment as a matter of law.[3] A defendant may demonstrate this by showing the trial court that the documents, affidavits, depositions, and other evidence in the record disclose the absence of evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case.[4] A grant of summary judgment must be affirmed if right for any reason.[5]

In moving for summary judgment, Fries argued, among other things, that it did not owe any duty to the Wests, and that no causal connection between its conduct and the Wests' injury had been established because the Wests indisputably relied on Market Value's appraisal in determining the purchase price for the property. In granting summary judgment to Fries, the court ruled that the Wests did not rely on Fries' appraisal and that Fries did not breach any standard of care in performing the appraisal.

In moving for summary judgment, Market Value also argued that it owed no duty to the Wests. In awarding summary judgment to Market Value, the court found that the undisputed evidence shows

---

[2] *Johnson v. American Nat. Red Cross*, 253 Ga. App. 587, 591-592 (2) (569 SE2d 242) (2002), aff'd, 276 Ga. 270 (578 SE2d 106) (2003).

[3] *Hutchins v. J. H. Harvey Co.*, 240 Ga. App. 582, 584 (524 SE2d 289) (1999).

[4] *Odem v. Pace Academy*, 235 Ga. App. 648 (510 SE2d 326) (1998).

[5] *Albany Oil Mill v. Sumter Elec. Membership Corp.*, 212 Ga. App. 242, 243 (3) (441 SE2d 524) (1994).

that Market Value did not owe the Wests any duty of care or breach any standard of care in performing the appraisal.

In *Robert & Co.*,[6] the question was whether an engineer who had issued a report on the condition of a building was liable to one who had purchased the building in reliance on the report. The Supreme Court found the best rule for resolution of this type dispute to be the one enunciated in the Restatement of Torts 2d, § 552 (1977). As stated in *Robert & Co.*,

> Under this standard, one who supplies information during the course of his . . . profession . . . has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly. In making a determination of whether the reliance by the third party is justifiable, we will look to the purpose for which the report or representation was made. If it can be shown that the representation was made for the purpose of inducing third parties to rely and act upon the reliance, then liability to the third party can attach. If such cannot be shown there will be no liability in the absence of privity, wilfulness or physical harm or property damage. The additional duty that this rule imposes may be, of course, limited by appropriate disclaimers which would alert those not in privity with the supplier of information that they may rely upon it only at their peril.[7]

In *Badische Corp. v. Caylor*,[8] which involved a professional negligence action against an accountant, the Court clarified *Robert* by holding that professional liability for negligence extends to those persons, or the limited class of persons, who the professional is "actually aware" will rely upon the information prepared.[9] And "where the plaintiffs are third parties who are not in privity with the party alleged to have made the negligent misrepresentation, recovery may be had only when the 'known third party's reliance was the desired result of the misrepresentation.' [Cit.]"[10] If any of the essential ele-

---

[6] Supra.

[7] 250 Ga. at 681-682.

[8] 257 Ga. 131 (356 SE2d 198) (1987).

[9] Id. at 133.

[10] *White v. BDO Seidman, LLP*, 249 Ga. App. 668, 670 (1) (549 SE2d 490) (2001); see *Liberty Nat. Life Ins. Co. v. Radiotherapy of Ga.*, 252 Ga. App. 543, 547 (1) (557 SE2d 59) (2001).

ments set forth in *Robert* are absent, the rule of that case does not apply.[11]

2. Here, the evidence, construed most favorably to the Wests, shows that Market Value was told that Ryan was going to use the appraisal to determine the sales price for the property. Therefore, purchasers such as the Wests clearly were not known third parties whose reliance was the desired result of the representation. It is true that Clayton West was a "mortgagee" by virtue of the fact that he held a second mortgage on the property and that Market Value authorized Ryan to distribute the appraisal to a limited class of persons which included mortgagees. Clearly, however, Market Value was not actually aware that one occupying the status of a mortgagee would rely upon the appraisal in purchasing the property. Therefore, in the words of *Robert & Co.*, Market Value was not "manifestly aware of the use to which the information was to be put" and did not "intend[ ] that it be so used."[12] For this reason, Market Value was entitled to summary judgment.

Fries was entitled to summary judgment, if for no other reason than because it is undisputed that the Wests and Ryans relied on Market Value's lower appraisal rather than the appraisal provided by Fries in establishing the purchase price for the property.

The remaining issues in this appeal relate to whether Market Value and Fries were negligent in performing the appraisals and are moot.

*Judgments affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JULY 1, 2003.

*William L. Colvin*, for appellant.
*Weissman, Nowack, Curry & Wilco, Steven D. Caley, Hawkins & Parnell, Warner S. Fox, Christopher S. Keith*, for appellees.

---

[11] *Bates & Assoc. v. Romei*, 207 Ga. App. 81, 85 (5) (426 SE2d 919) (1993).
[12] 250 Ga. at 682.