**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 12, 2014**

# In the Court of Appeals of Georgia

A14A0584. ADAMS et al. v. DEWITT et al.

ANDREWS, Presiding Judge.

This appeal arises out of an action for negligent misrepresentation Anthony D. Adams, Sr. and North Beach, LLC ("North Beach") commenced against F. Andrew DeWitt and his real estate appraisal firm, Cook & DeWitt, Inc. The trial court granted the defendants' motion for summary judgment, and Adams and North Beach now appeal, arguing that the trial court erred in concluding that the defendants did not owe them a duty of care and that they could not establish reasonable reliance on a misrepresentation of fact. We agree with the trial court that the defendants did not owe Adams and North Beach a duty of care under the circumstances, and we therefore affirm.

In an appeal from the grant of a motion for summary judgment, we review the law and evidence de novo. *Aubain-Gray v. Hobby Lobby Stores*, 323 Ga. App. 672 (747 SE2d 684) (2013). A motion for summary judgment should be granted when the evidence, construed in the nonmovant's favor, shows that no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

So viewed, the evidence shows that in 2008, a loan officer at First National Bank ("FNB") contacted Adams's son, Steve Adams, and asked him if Adams would be interested in looking at a property under development on Tybee Island, consisting of 25 residential lots. The property was owned at the time by The Woods at North Beach, LLC ("The Woods"). Due to a disagreement among its members, The Woods did not wish to continue developing the property, and FNB was trying to help The Woods find someone to take over the property and to assume responsibility for a loan The Woods had obtained from FNB. Steve told Adams about the property, and Adams viewed the property with Steve and the FNB loan officer.

Shortly after learning of the property, Adams formed North Beach, and he is its sole member. On March 28, 2008, North Beach purchased a promissory note and deed to secure debt The Woods had executed in FNB's favor. FNB made a short term

2

loan to North Beach of $3,183,700 to finance the purchase. Adams personally guaranteed the loan. At the time of this transaction, Adams and FNB understood that North Beach would foreclose on the property, purchase it in foreclosure, and then obtain a new development loan from FNB.[1] Following the second loan, Adams intended to further develop and then sell the lots and had an understanding with Steve that he would purchase 15 lots.

By letter dated April 4, 2008, FNB engaged DeWitt to perform an appraisal of the property. FNB's engagement letter described the function of the appraisal as follows: "Bank will rely upon this appraisal for internal use, including but not limited to, rendering a decision relative to a financial transaction." Pursuant to the engagement letter, DeWitt appraised the property and prepared an appraisal report showing an "as is" valuation of $5,000,000 as of May 1, 2008.[2] The report stated: "This report is intended for use by . . . [FNB]. Use of this report by others is not intended by the appraiser. This report is intended only for use in providing data upon

---

[1] The FNB loan officer testified that Adams chose to acquire the property through this unusual two-step process in an effort to wipe out a second mortgage on the property.

[2] DeWitt performed a second appraisal of the property in 2009, which reflected a significantly lower "as is" value of the property. Adams admitted that he did not rely on the 2009 appraisal, and it is not at issue in this appeal.

which the client may analyze the property as collateral for a mortgage loan. This report is not intended for any other use." The report also stated: "It is our understanding [that] this appraisal will be utilized by the client as the basis for decision making purposes regarding the underwriting criteria for a mortgage loan." An executive summary in the report mistakenly identified Steve Adams as the borrower.[3] In a cover letter accompanying the appraisal, DeWitt stated that the appraisal was subject to specific limiting conditions, including the following:

> 1. No environmental site assessment (ESA) was provided to the appraiser. The site is assumed to be free of any contamination of any kind including any fill which may or may not exist. 2. This development was built over an abandoned landfill. This valuation assumes that all environmental issues have been or will be resolved.

North Beach initiated foreclosure proceedings and ultimately purchased the property at a foreclosure sale on May 6, 2008. On the same day, FNB loaned North Beach up to $4 million to repay the first loan and develop the property. The settlement statement for the second loan indicates that North Beach was required to reimburse FNB for the cost of the appraisal. North Beach never completed the

---

[3] DeWitt recalled speaking with Steve during the appraisal process but could not remember what they discussed. Steve testified that he spoke with DeWitt but could not remember if it was in connection with the 2008 or 2009 appraisal and could not recall what they talked about.

planned development work on the property. Adams testified that work ceased due to buried trash on the site and the cost of the clean up work the City of Tybee Island wanted North Beach to perform.

Adams could not recall when he first saw the DeWitt appraisal but stated that he was "fairly sure" he read it before the second loan closed. Adams stated that DeWitt did not give him the report and that he "believed" he picked it up at FNB.

DeWitt stated in an affidavit that he knew nothing about North Beach and never met Adams until after Adams and North Beach filed their lawsuit against him. He did not intend for North Beach or Adams to use or rely upon his appraisal. DeWitt stated that he never gave the appraisal to anyone other than the employee at FNB who ordered it and that he was not aware that any representative of the bank was going to give a copy of it to Adams.

1. Adams and North Beach argue that the trial court erred in concluding that DeWitt did not owe them a duty of care. We disagree.

Adams and North Beach allege in their complaint that DeWitt breached the professional standard of care applicable to real estate appraisers in preparing his appraisal and that they relied on representations in the appraisal to their detriment

when they proceeded to foreclose on and purchase the property. They allege that

Cook & DeWitt is vicariously liable for DeWitt's negligence.

In *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, the Supreme Court of

Georgia established a rule governing the viability of a negligent misrepresentation

claim against a professional in the absence of privity[4] and involving economic loss

only:

> [O]ne who supplies information during the course of his business, profession, [or] employment . . . has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly. In making a determination of whether the reliance by the third party is justifiable, we will look to the purpose for which the report or representation was made. If it can be shown that the representation was made for the purpose of inducing third parties to rely and act upon the reliance, then liability to the third party can attach. . . . The additional duty that this rule imposes may be, of course, limited by appropriate disclaimers which would alert those not in privity with the supplier of information that they may rely upon it only at their peril.

250 Ga. 680, 681-682 (300 SE2d 503) (1983). In its subsequent decision in *Badische*

*Corp. v. Caylor*, the Supreme Court clarified that the rule in *Robert & Co.* did not

---

[4] Adams and North Beach do not contend, and we do not find, that privity existed simply because North Beach ultimately reimbursed FNB for the cost of the appraisal.

"expand[] professional liability for negligence to an unlimited class of persons whose presence is merely 'foreseeable,'" but rather extended liability only "to those persons, or the limited class of persons who the professional is actually aware will rely upon the information he prepared. " (Footnote omitted.) 257 Ga. 131, 133 (356 SE2d 198) (1987); see also *Martha H. West Trust v. Market Value of Atlanta*, 262 Ga. App. 90, 93 (2) (584 SE2d 688) (2003) (appraiser who appraised property for seller was not liable in negligence to purchaser when the appraiser knew appraisal would be used to determine sales price but was not aware seller was actually in process of selling property and appraisal contained provision prohibiting its distribution without appraiser's consent).

The evidence in this case establishes that DeWitt knew a borrower existed, but it cannot support an inference that DeWitt actually was aware that the borrower received the appraisal much less actually relied on it. Adams admitted that DeWitt did not give him the appraisal. DeWitt did not know of North Beach and had not met Adams at the time he performed the appraisal, and he was not aware that anyone at FNB intended to give Adams the appraisal. The evidence also fails to raise an inference that DeWitt intended for the borrower to rely on his appraisal. Even if DeWitt knew that his appraisal could affect the borrower by, for example, influencing

the amount of credit extended, "[t]hat is not evidence . . . that [DeWitt] did the appraisal[] for the purpose of inducing the [borrower] to justifiably rely and act upon the appraisal[]." *Wingate Land, LLC v. ValueFirst, Inc.*, 314 Ga. App. 24, 26 (722 SE2d 868) (2012). DeWitt stated that he did not intend for North Beach or Adams to use or rely upon his appraisal. The appraisal report, on its face, negates any such intention, stating expressly: "This report is intended for use by . . . [FNB]. Use of this report by others is not intended by the appraiser. This report is intended only for use in providing data upon which the client may analyze the property as collateral for a mortgage loan. This report is not intended for any other use." Such language constitutes an "appropriate disclaimer[] which would alert those not in privity with [DeWitt] that they may rely upon [his appraisal] only at their peril." *Robert & Co.*, supra, 250 Ga. at 682.

In conclusion, the trial court did not err in concluding that DeWitt owed no professional duty to North Beach or Adams under the rule established in *Robert & Co.*, supra.

2. Given our holding above in Division 1, we need not address Adams and North Beach's argument that issues of material fact remain regarding their reasonable reliance on misrepresentations of fact.

8

*Judgment affirmed. McFadden and Ray, JJ., concur.*