[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12911
Non-Argument Calendar
_____

D.C. Docket No. 7:12-cv-00144-HL

MARTHA F. OWENS,
Individually and as the Executrix of the
Estate of Andrew T. Fuller, et al.,

                                        Plaintiffs -
                                        Counter Defendants,

DONALD ABNER POPE, JR.,
REFUSE MATERIALS INC.,

                                        Plaintiffs - Appellants,

versus

STIFEL NICOLAUS AND COMPANY INC.,

                                        Defendant -
                                        Counter Claimant -
                                        Appellee,

ANTHONY JOHN FISHER,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 27, 2016)

Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Plaintiffs Donald Pope and Refuse Materials, Inc. (RMI) appeal the district court's order granting summary judgment in favor of Defendant Stifel, Nicolaus & Co. (SNC) on Pope and RMI's claims for fraud and negligence arising out of two failed investments made by RMI and solicited by Defendant Anthony Fisher, a former SNC employee. The district court held that SNC cannot be held liable for Fisher's alleged fraud under an agency theory and that SNC is not liable for negligence because it owed no duty to non-clients Pope and RMI. Pope and RMI contend that there is a genuine issue of fact as to Fisher's actual or apparent authority to solicit the failed investments and that SNC owed a duty of reasonable care to clients and non-clients alike. After review, we affirm in part and reverse in part.

## I. FACTS

In April 2009, SNC, a securities broker-dealer firm, hired Anthony Fisher to serve as a financial advisor. Pope and RMI allege that SNC did so negligently by

2

missing several "red flags" in Fisher's employment history. They further allege that Fisher's conduct during his SNC employment raised additional "red flags" regarding his compliance with securities regulations and with SNC policy.

In May 2011, Fisher recommended that SNC add Cardiac Network, Inc. (CNI), a medical technology company, to SNC's portfolio of promoted investments. After a brief inquiry, SNC declined. Nevertheless, in June or July 2011, Fisher contacted RMI through Pope to solicit RMI's investment in CNI. Fisher contacted Pope and RMI in his capacity as an SNC financial advisor, identifying himself as an SNC employee and using his SNC e-mail address and phone number. At some point, Fisher insinuated to Pope and RMI that he would be on the board of CNI, but Fisher never explained his direct relationship with CNI.

After a few conversations, RMI agreed to invest $270,000 in CNI in return for a convertible promissory note that in six months would pay 10% interest and 27,000 shares of CNI stock. RMI made this investment in August 2011. Under the terms of a contemporaneously executed securities purchase agreement, RMI's investment was not "effected by or through a broker-dealer in a public offering." At some point during the consummation of this investment, Pope asked Fisher whether RMI needed to set up an SNC account, and Fisher replied that it was not necessary at that time.

3

In October 2011, Fisher began calling Pope daily from his SNC office to solicit a second investment in CNI. In November 2011, RMI invested $75,000 in return for a second convertible promissory note that in six months would pay 10% interest and 15,000 shares of CNI stock. As with the first investment, a contemporaneously executed securities purchase agreement disclaims the involvement of a broker-dealer in a public offering.

CNI never repaid the promissory note and never gave RMI the promised shares of stock. Pope and RMI allege that RMI's CNI investment was one of many fraudulently solicited investments in a "pump and dump" scheme perpetuated by Fisher and others. In February 2012, SNC fired Fisher for engaging in private transactions outside the firm, also known as "selling away."

## II. PROCEDURAL HISTORY

In September 2012, Martha F. Owens, individually and on behalf of the estate of Andrew T. Fuller, Susan Rockett, Pope, and RMI sued SNC in Georgia state court alleging counts for fraud and negligence and demanding punitive damages. In October 2012, SNC invoked diversity jurisdiction under 28 U.S.C. § 1331 and removed the action to the United States District Court for the Middle District of Georgia. In August 2013, the plaintiffs added Fisher as an individual defendant. Fisher failed to appear in this action, and a clerk's default was entered on December 23, 2013.

4

In December 2013, SNC moved for summary judgment as to all of Pope and RMI's claims. Among other things, SNC argued that Pope and RMI's fraud claims failed as a matter of law because there was no genuine issue of material fact regarding whether Fisher was acting within his actual or apparent authority. As to Pope and RMI's negligence claims, SNC argued that it owed no duty to either Pope or RMI because they were not and are not SNC clients. In June 2014, the district court granted summary judgment in favor of SNC on all of Pope and RMI's claims.

In November 2014, the surviving claims of Owens and Rockett went to trial. Before the jury rendered a verdict, Owens, Rockett, and SNC reached a settlement. On December 9, 2014, the district court entered final judgment in favor of SNC as to Pope and RMI's claims, giving finality to its June 2014 order granting summary judgment. The next day, Pope and RMI appealed the district court's grant of summary judgment. Because the district court had not yet entered a final default judgment as to Pope and RMI's claims against Fisher, this Court dismissed the appeal for want of jurisdiction.

On June 26, 2015, the district court entered a final default judgment in favor of Pope and RMI and against Fisher. On June 29, 2015, Pope and RMI again appealed the district court's judgment in favor of SNC. As decided in a November 2015 order of this Court, we have jurisdiction to hear this appeal.

5

## III. STANDARD OF REVIEW

We review *de novo* a district court's order granting summary judgment, viewing all facts and reasonable inferences in the light most favorable to the non-moving party. *Hill v. Cundiff*, 797 F.3d 948, 967 (11th Cir. 2015). "Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Hallmark Devs., Inc. v. Fulton Cty., Ga.*, 466 F.3d 1276, 1283 (11th Cir. 2006)); *see also* Fed. R. Civ. P. 56(a).

## IV. DISCUSSION

According to the district court, Pope and RMI's fraud claims failed as a matter of law because there was no genuine issue of fact regarding whether Fisher was acting with actual or apparent authority when he defrauded RMI. Likewise, Pope and RMI's negligence claims failed as a matter of law because SNC owes no duty to non-clients. We agree with the district court as to the latter conclusion but disagree as to the former conclusion.

Before discussing the district court's conclusions, we first note that the district court's judgment as to Pope's individual claims must be affirmed on alternate grounds— there is no genuine issue of fact regarding whether Pope suffered harm. RMI, not Pope, made each of the failed investments. Pope's involvement in the investments was solely as an officer and part-owner of RMI.

Because Pope suffered no compensable harm in his individual capacity, his individual claims fail as a matter of law. We now proceed to discuss the district court's conclusions as to RMI's claims.

*A. Fraud*

The parties agree that Fisher is the only individual at SNC with whom Pope spoke regarding CNI. RMI nevertheless seeks to hold SNC liable for Fisher's misrepresentations under an agency theory.

In Georgia, "[t]he relationship of principal and agent arises whenever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." O.C.G.A. § 10-6-1. "The agent shall act within the authority granted to him, reasonably interpreted; if he shall exceed or violate his instructions, he does it at his own risk, the principal having the privilege of affirming or dissenting, as his interest may dictate." O.C.G.A. § 10-6-21. A principal may also be held liable for the actions of an agent with apparent authority. "Apparent authority is that which the principal's conduct leads a third party reasonably to believe the agent has; it creates an estoppel allowing third parties to bind a principal to the agent's acts on account of the principal's conduct, reasonably construed by third parties acting in innocent reliance thereon." *Morris v. Williams*, 448 S.E.2d 267, 269 (Ga. App. 1994). Apparent authority is measured by the conduct of the principal, not the agent. *See*

7

*Thompson v. General Motors Acceptance Corp.*, 389 S.E.2d 20, 22 (Ga. App. 1989).

The district court concluded that Fisher lacked actual authority to solicit RMI's investment in CNI because SNC had declined to promote CNI and SNC policy prohibits "selling away."  RMI contends that SNC's acquiescence in Fisher's abnormal conduct indicates that Fisher had actual authority to promote CNI.  We disagree.  SNC identified clear and unrefuted record evidence showing that Fisher lacked authority to promote CNI within SNC and lacked authority to sell away.  RMI's conjecture to the contrary does not create a genuine issue of fact as to Fisher's actual authority.

As to apparent authority, before the district court, RMI asserted that, by hiring Fisher as a broker and providing him with an SNC email address, phone number, and office, SNC vested Fisher with apparent authority to solicit and facilitate the CNI investment.  The district court concluded that RMI's decision to invest in CNI was not motivated by any representation by SNC and held that Fisher therefore lacked apparent authority to solicit and facilitate the investment.  Although we disagree that the district court's finding of fact answers the question of apparent authority, we believe this issue to be controlled by indistinguishable Georgia law.

In *Hobbs v. Principal Financial Group, Inc.*, 497 S.E.2d 243 (Ga. Ct. App. 1998), the Georgia Court of Appeals considered the agency question under remarkably similar facts. The plaintiffs sued an insurance broker for fraud, breach of contract, negligent hiring, and negligent supervision. *Hobbs*, 497 S.E.2d at 244. The plaintiffs alleged that an agent for the insurance broker fraudulently induced them to invest in a non-existent investment fund that the agent claimed the insurance broker managed. *Id.* at 243–44. To support their theory of apparent authority, the plaintiffs noted that the insurance broker provided the agent with business cards identifying him as the broker's agent "along with brochures and annual reports describing investment opportunities which could be purchased from [the insurance broker]." *Id.* at 244. Citing O.C.G.A. § 51-2-2,[1] the court held that the agent's "acts in fraudulently inducing [the plaintiffs] to invest money in a nonexistent fund which he falsely represented to be [the insurance broker's] fund were personal acts for his own benefit, involved no participation by [the insurance broker], and were of no benefit to [the insurance broker]." *Hobbs*, 497 S.E.2d at 245. On these facts, the court declined to hold the insurance broker liable for the agent's torts. *Id.*

---

[1] Section 51-2-2 provides that "[e]very person shall be liable for torts committed by his wife, his child, or his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily."

9

In some cases, Georgia courts have held a principal liable for the fraud of its agent under an apparent authority theory. *See, e.g.*, *Jester v. Hill*, 288 S.E.2d 870, 874 (Ga. Ct. App. 1982) (permitting apparent authority claim regarding an insurance agent's misrepresentations that the insured had coverage); *Arrington & Blount Ford, Inc. v. Jinks*, 270 S.E.2d 27, 30 (Ga. Ct. App. 1980) (permitting apparent authority claim regarding a car salesman's theft and sale to plaintiff of the dealership's car). This case, however, is indistinguishable from *Hobbs*. As in *Hobbs*, RMI relies upon Fisher's employment status and the trappings of his employment to create a genuine issue of material fact on apparent authority. *See Hobbs*, 497 S.E.2d at 244. As in *Hobbs*, SNC did not receive any benefit from and did not directly participate in the alleged fraud. *See id.* at 245. As in *Hobbs*, Fisher's alleged conduct was solely for his personal benefit. *See id*. Therefore, as in *Hobbs*, SNC cannot be held liable for Fisher's tortious conduct. Summary judgment was appropriate as to RMI's fraud claim.

*B. Negligence*

The parties agree that neither Pope nor RMI ever formalized a broker-client relationship with SNC. Finding that Pope and RMI "failed to establish that SNC owes a duty to exercise any degree of care toward non-clients," the district court concluded that Pope and RMI's negligence claims failed as a matter of law. This was error.

10

In support of its "no duty" holding, the district court cited several Georgia cases discussing professional liability: *Badische Corp. v. Caylor*, 356 S.E.2d 198 (Ga. 1987); *Glisson v. Freeman*, 532 S.E.2d 442 (Ga. Ct. App. 2000); and *Minor v. E.F. Hutton & Co.*, 409 S.E.2d 262 (Ga. Ct. App. 1991).[2] On appeal, SNC cites additional cases describing the same: *McKenna, Long & Aldridge, LLP v. Keller*, 598 S.E.2d 892 (Ga. Ct. App. 2004); *Martha H. West Trust v. Market Value of Atlanta, Inc.*, 584 S.E.2d 688 (Ga. Ct. App. 2003); and *Legacy Homes, Inc. v. Cole*, 421 S.E.2d 127 (Ga. Ct. App. 1992). None, however, stand for the broad proposition that a professional owes a duty of care only to clients. Rather, the cases either define the duty of care in a professional liability case or limit the scope of professional negligence.[3]

---

[2] The district court also cited *Drury v. Harris Ventures, Inc.*, 691 S.E.2d 356 (Ga. App. 2010) for the proposition that summary judgment is appropriate where an agent was on a private enterprise. *Drury* affirmed summary judgment in favor of a defendant upon concluding that the evidence was "plain, palpable, and undisputed" that the employer exercised reasonable care in hiring the offending employee. *Id.* at 359. *Drury* therefore does not support the district court's holding as to RMI's negligent hiring claim.

[3] *See Badische Corp.*, 356 S.E.2d at 200 ("[P]rofessional liability for negligence, including the liability of accountants, extends to those persons, or the limited class of persons who the professional is actually aware will rely upon the information he prepared."); *McKenna, Long & Aldridge, LLP*, 598 S.E.2d at 894–95 ("[I]f an attorney owes no legal duty sounding in negligence to an adversary to investigate a client's claim prior to filing suit or to avoid filing a potentially frivolous suit, certainly the attorney owed no duty to investigate before merely sending a demand letter on behalf of a client." (citation omitted)); *Martha H. West Trust*, 584 S.E.2d at 691 (reciting the rule in *Badische*); *Glisson*, 532 S.E.2d at 449 (describing a broker's duty to its client); *Minor*, 409 S.E.2d at 264 (describing a broker's duty to its client); *Legacy Homes, Inc.*, 421 S.E.2d at 128 ("It is generally held that an attorney-client relationship must be demonstrated before a plaintiff may recover in a legal malpractice suit." (quoting *Guillebeau v. Jenkins*, 355 S.E.2d 453, 457 (Ga. Ct. App. 1987)))).

11

Notwithstanding the relatively narrow scope of professional negligence, other theories of tort liability remain. Neither the lawyer who runs a red light nor the accounting firm that fails to warn of a slippery floor could escape general tort liability by arguing that the plaintiff was not a client. RMI's negligence claim against SNC is not that SNC negligently gave RMI bad investment advice.[4] Rather, RMI claims that SNC negligently hired, supervised, and retained Fisher, a fraudster who used his employment with SNC to gain RMI's trust and thereby perpetuate his scheme. The availability of this tort theory does not necessarily require a broker-client relationship.

In Georgia, "a defendant employer has the duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's 'tendencies' or propensities that the employee could cause the type of harm sustained by the plaintiff." *Munroe v. Universal Health Servs.*, 596 S.E.2d 604, 606 (Ga. 2004). That is precisely what RMI argues here. RMI's negligence theory is that SNC breached its duty of care by hiring and retaining Fisher, whom SNC knew or should have known posed a risk of defrauding others and that Fisher in fact caused RMI the type of harm that SNC could reasonably have foreseen. There

---

[4] To the extent RMI makes such a claim, the district court is correct that SNC owed no professional liability duty to non-clients Pope and RMI. As discussed above, SNC cannot be held liable for Fisher's negligence under an agency theory either.

is no basis in Georgia law or in logic to limit the scope of that duty to existing clients.

For example, in *Underberg v. Southern Alarm, Inc.*, an alarm company hired a convicted violent felon as a door-to-door salesman. 643 S.E.2d 374, 375 (Ga. App. 2007). The salesman kidnapped a prospective customer, who sued the alarm company. *Id*. Notwithstanding the fact that the kidnapping victim never became a customer of the defendant, the court held that "a jury could find that [the employer] owed a heightened duty to ascertain whether individuals it hired, even briefly, to enter homes of unsuspecting persons for the purpose of selling security systems were suited for this purpose." *Id.* at 377. Rather than find no duty, *Underberg* admits of the possibility of a heightened duty where an employee will be interacting with prospective customers.

This case is analogous. Fisher was hired to solicit new clients and service the accounts of old clients. A jury could find it foreseeable that a financial advisor with "red flags" in his employment and investment management history would use his position to identify, build relationships with, and exploit marks, irrespective of whether the marks ever formalize a client relationship with the brokerage. Therefore, RMI's negligent hiring, retention, and supervision claim should have survived summary judgment.

*C. Punitive Damages*

13

Upon concluding that Pope and RMI's underlying tort claims failed as a matter of law, the district court held that Pope and RMI's claims for punitive damages must likewise fail.  Because we reverse the order of the district court as to RMI's negligence claim, the district court's reasoning no longer applies.  We nevertheless affirm on alternate grounds the district court's order as to the punitive damages claim.  The Georgia punitive damages statute, O.C.G.A. § 51-12-5.1(b), imposes a strict state of mind requirement upon plaintiffs:

> Punitive damages cannot be imposed . . . without a finding of some form of culpable conduct, and negligence, even gross negligence, is not sufficient to support an award of punitive damages . . . .  There must be aggravating circumstances or outrage, such as spite, malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton.

*Comcast Corp. v. Warren*, 650 S.E.2d 307, 311 (Ga. Ct. App. 2007)").  RMI fails to proffer summary judgment evidence indicating SNC's alleged misconduct was spiteful, malicious, fraudulent, evil, conscious, or deliberate.  Absent evidence creating a genuine issue of fact as to the material state-of-mind element, we affirm the district court's order as to the punitive damages claim.

## V. CONCLUSION

For the reasons stated above, the district court's order granting summary judgment in favor of SNC is affirmed as to Pope's claims and as to RMI's fraud and punitive damages claims but reversed as to RMI's negligence claim.

14

**AFFIRMED IN PART, REVERSED IN PART.**