**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 12, 2019**

# In the Court of Appeals of Georgia

A18A1608. INCOMM FINANCIAL SERVICES, INC. v. GLOBAL
    PAYMENTS, INC.

REESE, Judge.

Appellant Incomm Financial Services, Inc. ("IFS") seeks review of an order of
the trial court dismissing IFS's action against Global Payments, Inc. ("Global"). For
the reasons set forth, infra, we affirm in part, reverse in part, and remand the case for
further proceedings.

Construed in favor of IFS,[1] the amended verified complaint alleges the
following facts. IFS issued and serviced prepaid cards through VISA's electronic
payment network ("VISA network"). Global sold products and services that granted
merchants access to the VISA network and recruited merchants to the VISA network.

---

[1] See *Southstar Energy Svcs. v. Ellison*, 286 Ga. 709, 710 (1) (691 SE2d 203)
(2010).

Global also supplied (to certain participants of the VISA transactions) transaction information and data that Global had processed from the merchants it had recruited.

In a typical transaction, a cardholder presented a VISA prepaid card to a merchant who had joined the VISA network. The transaction data was then electronically transferred to its acquirer and processor, such as Global. Upon receipt, Global could either submit the information to the VISA network or reject the transaction and decline to transmit it through the VISA network. If the transaction contained irregular, unverifiable, invalid, or fraudulent data, Global had a duty not to submit the transaction information to the VISA Network.

A merchant could use a reversal transaction to correct a processing error or inadvertent charge. A reversal transaction could require a refund to a prepaid card, such as the Vanilla VISA Card, in which case the servicer would credit the card with the amount of the refund.

According to the amended complaint, between March 10, 2015, and April 28, 2015, IFS credited $1,585,813.13 to Vanilla VISA cardholders as a result of over 3,600 fraudulent transactions that Global had supplied to IFS. The cardholders had made purchases from a variety of merchants ("Originating Merchants"). Based on the purchases, IFS debited the cardholders' card balances and provided payment to the

Originating Merchants. The cardholders then initiated fraudulent reversal transactions ("Reversal Transactions") through five different retail merchants ("Reversal Merchants"), which Global, through its independent sales organizations ("ISOs"), had recruited to join the VISA network.

IFS alleged that Global had failed to exercise reasonable and ordinary care in supplying the Reversal Transactions to the VISA network; that Global knew that IFS and its agents were foreseeable recipients and users of the information Global processed and supplied to the VISA Networks and that they would rely on that information; and that Global intended that a VISA network servicer, such as IFS, would use the transaction information it supplied to consummate the transaction and provide a benefit to the ISOs, merchants, and cardholders.

Specifically, IFS alleged that Global knew or should have known that the Reversal Transactions were invalid because the Originating Merchants were different from the Reversal Merchants and the preauthorization keys transmitted in the Reversal Transactions neither matched any prior preauthorization key sent by the same Reversal Merchant nor any preauthorization keys in any Originating Transaction.

3

IFS further alleged that Global had a duty to exercise reasonable care in supplying the VISA network and servicers, such as IFS, with the transactions initiated by the Reversal Merchants. If Global did not exercise such care, it was reasonably foreseeable that IFS or other servicers would be harmed. IFS contended that it justifiably relied on the information supplied by Global, and suffered damages as a direct and proximate cause of Global's negligence.

The trial court granted Global's motion to dismiss, concluding that IFS had failed to state a claim upon which relief could be granted. Specifically, "[IFS could not] show that [Global] owed a duty to [IFS], either contractual or common law, and therefore [could not] establish a claim for negligence or negligent misrepresentation." This appeal followed.

"We review de novo the dismissal of a complaint for failure to state a claim. This Court will accept as true all well-pled material allegations in the complaint and resolve any doubts in favor of [the plaintiff]."[2] With these guiding principles in mind, we turn now to IFS's specific claims of error.

---

[2] *Roberts v. JPMorgan Chase Bank*, 342 Ga. App. 73 (802 SE2d 880) (2017) (citations and punctuation omitted).

1. IFS contends that the trial court erred in dismissing its negligent misrepresentation claim (Count 2), arguing that IFS plainly alleged the three elements of such a claim. We agree.

In this enumerated error, IFS primarily relies on *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*,[3] in which the Supreme Court of Georgia "granted certiorari in order to examine when a cause of action accrues when recovery is sought for economic loss resulting from alleged tortious negligent misrepresentation."[4] The Court noted:

> [the] cause of action [for negligent misrepresentation] was first recognized by this Court in *Robert & Co. Assocs. v. Rhodes-Haverty-Partnership*,[5] and was adopted from the Restatement (Second) of Torts, § 522. Its essential elements are: (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such

---

[3] 267 Ga. 424 (479 SE2d 727) (1997).

[4] Id. at 426; see also id. at 428 (1) (holding that the plaintiff's suit was not barred by the statute of limitation because "in a claim for economic injury sustained due to reliance upon false information negligently provided by a defendant, the statute of limitation begins to run when the plaintiff suffers pecuniary loss with certainty, and not as a matter of pure speculation[ ]").

[5] 250 Ga. 680 (300 SE2d 503) (1983).

5

persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.[6]

In recognizing a cause of action for negligent misrepresentation, the Supreme Court of Georgia explained in *Robert & Co. Assocs.*:

> Under [the rule enunciated in the Second Restatement of Torts], one who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly. In making a determination of whether the reliance by the third party is justifiable, we will look to the purpose for which the report or representation was made. If it can be shown that the representation was made for the purpose of inducing third parties to rely and act upon the reliance, then liability to the third party can attach.[7]

---

[6] *Hardaway Co.*, 267 Ga. at 426 (1) (footnote omitted).

[7] *Robert & Co. Assocs.*, 250 Ga. at 681-682.

6

"If any of these essential elements are absent, the rule of *Robert & Co. Assocs.* does not apply, and there will be no liability unless [the plaintiff] can comply with the requirements of the Georgia economic loss rule[8] or its emergency exception."[9]

Accepting as true the allegations in the amended complaint,[10] Count 2 stated a valid cause of action for negligent misrepresentation.[11] IFS alleged that Global supplied the transaction information in the course of its business, in which it had a pecuniary interest; that Global knew the transaction information it supplied to the

---

[8] See OCGA § 51-1-11 (a); see also *Bates & Assocs. v. Romei*, 207 Ga. App. 81, 83 (4) (426 SE2d 919) (1993) ("The Georgia 'economic loss rule' in essence prevents recovery in tort when a defective product has resulted in the loss of the value or use of the thing sold, or the cost of repairing it. Under such circumstances, the duty breached is generally a contractual one and the plaintiff is merely suing for the benefit of his bargain. The rule does not prevent a tort action to recover for injury to persons or to property other than the product itself, because the duty breached in such situations generally arises independent of the contract. Nor does the rule preclude recovery for damages to the defective product itself where the injury thereto resulted from accident. But, where there exists no accident, and no physical damage to other property, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing or modifying it, the courts adhere to the rule that purely economic interests are not entitled to protection against mere negligence, and accordingly deny recovery.").

[9] *Bates & Assocs.*, 207 Ga. App. at 85 (5).

[10] See *Southstar Energy Svcs.*, 286 Ga. at 710 (1).

[11] See *Hardaway Co.*, 267 Ga. at 426 (1); *Robert & Co. Assocs.*, 250 Ga. at 681-682.

7

VISA Network would be forwarded to a servicer, like IFS, for payment; that IFS was part of the foreseeable and limited class of recipients for whom the information was intended;[12] that Global knew or should have known that the Reversal Transactions were invalid; that Global supplied the information in the Reversal Transactions with the purpose and intent that the servicers, like IFS, fulfill the payments;[13] that as a result, Global had a duty to use reasonable care in supplying information to servicers, like IFS, in the VISA network; that IFS breached this duty; that IFS reasonably relied on the information Global provided; and that IFS suffered damages as a direct and proximate cause of Global's negligent misrepresentation.

Accordingly, we hold that IFS stated a valid claim for negligent misrepresentation, and the trial court thus erred in dismissing Count 2 of the complaint.

---

[12] See *Badische Corp. v. Caylor*, 257 Ga. 131, 133 (356 SE2d 198) (1987) ("[P]rofessional liability for negligence, including the liability of accountants, extends to those persons, or the limited class of persons who the professional is actually aware will rely upon the information he prepared.").

[13] Cf. *Adams v. DeWitt*, 327 Ga. App. 576 (760 SE2d 191) (2014) (affirming summary judgment where the evidence failed to raise an inference that an appraiser intended for a borrower to rely on his appraisal and where the appraisal report contained a disclaimer that the report was intended only for the client lender to analyze the property as collateral for a mortgage loan).

2. IFS argues that the trial court erred in dismissing its negligence claim (Count 1), contending that Global owed a common law duty of reasonable care to those who relied upon the information it supplied during the course of its business. Specifically, IFS contends Global owed a common law duty of reasonable care under *Robert & Co. Assocs.*; IFS alleged provable facts that established the duty enunciated in *Robert & Co. Assocs.*; the duty enunciated in *Robert & Co. Assocs.* was not limited to professional negligence cases; and IFS pled a negligent misrepresentation claim with sufficient particularity.

IFS has failed to identify a separate theory to support its claim for negligence.[14] The two causes of action in the amended complaint are duplicative, as are the two claims of error asserted on appeal.

Accordingly, we affirm the trial court's dismissal of Count 1 of the amended complaint (negligence).[15] For the reasons given in Division 1, supra, we reverse the

---

[14] Cf. *Robert & Co. Assocs.*, 250 Ga. at 681 (discussing the general rule requiring privity where the loss was merely economic).

[15] See *Walker County v. Tri-State Crematory*, 292 Ga. App. 411, 412 (664 SE2d 788) (2008) ("The dismissal of a complaint will be affirmed if right for any reason.").

9

dismissal of Count 2 (negligent misrepresentation), and remand for further proceedings consistent with this opinion.

*Judgment affirmed in part, reversed in part, and case remanded. Barnes, P. J., concurs. McMillian, J., concurs fully in Division 1 and in judgment only as to Division 2.\**

**\* DIVISION 2 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**